THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH SHIEF, Defendant-Appellant.

First District (3rd Division)   No. 1—98—0370

Opinion filed March 29, 2000.

674

CAHILL, P.J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Elyse Krug Miller, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Nancy N. Colletti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Following a jury trial in November 1997, defendant, Kenneth Shief, was convicted of armed robbery (720 ILCS 5/18—2 (West 1998)) and attempted aggravated criminal sexual assault (720 ILCS 5/8—4(a), 12—14(a)(1) (West 1996)) and was subsequently sentenced to concurrent terms of 25 years and 15 years, respectively, in prison. On appeal, defendant argues (1) pretrial publicity concerning his case denied him his right to an impartial jury; (2) the trial court erred by allowing evidence of other crimes; (3) the evidence is insufficient to establish his guilt for attempted aggravated criminal sexual assault; (4) and certain statements made by the State during closing arguments operated to deny him a fair trial. We agree with defendant that certain closing remarks made by the prosecutor exceeded the bounds of proper argument and constituted reversible error. Accordingly, we reverse and remand for a new trial.

## BACKGROUND

The State's evidence at trial established that at about 5 p.m. on the evening of January 9, 1996, the victim, Ida Smith, was walking home on Stony Island Avenue toward 79th Street, near Jackson Park Hospital. As she walked, Smith heard someone behind her. Smith turned and noticed a young man, wearing a black and brown cloth jacket and a dark-colored skull cap, running toward her.

When the man approached, he displayed a gun from his jacket pocket and told Smith "this is a stickup." The man then placed the gun back into his pocket, keeping it pointed at Smith. The man told Smith to follow him, but Smith refused. The man responded by instructing Smith to empty her pockets. Smith complied and gave the man $5 and a roll of bus tokens. According to Smith, the man told her that her money was not enough and that she either "had to give him some pussy or he would shoot her." Scared, Smith ran across the street to a nearby bus and went home where she contacted the police.

Smith told the police that her attacker was a black male, about 25 years of age, 5 feet 8 inches tall, weighing about 160 pounds, and having a medium complexion. About a week later, on January 15, 1996, Smith viewed a lineup at Area 2 police headquarters and identified defendant as the man who accosted her. At trial, Smith again identified defendant as her attacker.

Over defendant's objection, the State presented the testimonies of Regina Bridges and Aisha Glover, who each testified that defendant had threatened and robbed them on separate occasions.[1] Bridges testified that at about 6:45 a.m. on January 3, 1996, she was walking toward the bus stop located at 79th Street and East End Avenue when she noticed a man, whom she identified at trial as defendant, approach her from behind. Although she did not know defendant by name, Bridges explained she recognized defendant from the neighborhood and as a former student from grade school. Bridges further stated that she had seen defendant on numerous occasions.

Defendant, who was wearing a black coat and jeans, approached Bridges and stated he would shoot her if she ran or screamed. With his hands in his pockets, defendant demanded Bridges' money. Bridges gave defendant her bus fare of $1.75. Defendant refused to take Bridges' money, stating he knew she had at least $10. Noticing a bus approaching, defendant told Bridges to get on the bus, which she did.

---

[1]Prior to trial, defendant moved to exclude the State from presenting this evidence. Following a hearing, the trial court denied defendant's motion and elected to admonish the jury regarding the nature of such evidence and its use in reaching a verdict.

When Bridges arrived home, she informed the police of what occurred and informed them that defendant lived in the area of 76th Street. Bridges further described defendant as a black male, about 16 years of age, 5 feet 10 inches tall, and weighing about 150 pounds. Bridges later identified defendant in a police lineup held on January 16, 1996.

Glover stated that at about 7:30 a.m. on January 14, 1996, she was at a bus stop across from Jackson Park Hospital at 76th Street and Stony Island Avenue. As she waited for the bus, Glover observed a man whom she identified at trial as defendant approach from her rear. According to Glover, defendant was wearing a black and brown winter jacket, a small black skull cap and black jeans. Defendant moved next to Glover, standing with his hands in his pockets. Defendant told Glover that she had two choices and five seconds to answer. According to defendant, Glover could either "give him some pussy or he would shoot her." Glover did not answer. Defendant repeated to Glover her two options. At that time, Glover saw a group of people exiting the hospital. Glover screamed and immediately ran across the street away from defendant.

Once Glover arrived at home, she called the police and reported the incident involving defendant. Glover told the police that her attacker was a black male, 28 to 32 years of age, 5 feet 9 inches tall, and weighing about 130 pounds. Glover additionally stated that the offender's face was "scruffy" which, according to Glover, made him appear older. When the police arrived at Glover's house, they showed her a picture of an individual whom Glover identified as her attacker and whom she identified at trial as defendant. Glover again identified defendant as the offender in a police lineup conducted on January 15, 1996.

Chicago police officer David Cavazos testified that he investigated a series of attacks in the area of 79th Street and Stony Island Avenue, including the attacks on Smith, Bridges and Glover. Cavazos explained he received a composite sketch of a suspect, as well as reports on the foregoing incidents.

While patrolling the area on the evening of January 16, 1996, Cavazos went to a residence at 1532 East 76th Place where he saw defendant, together with two of his family members, standing at the front door. Cavazos believed that defendant matched the composite drawing of the suspect. Cavazos was invited into the home by one of the residents. Once inside, Cavazos observed a black and brown coat on the couch. Upon obtaining consent to search the premises, Cavazos recovered two skull caps. Cavazos asked defendant if the coat was his, and defendant acknowledged that it was. Cavazos then placed defendant under arrest. Cavazos stated that the arrest report described de-

fendant as a black male, 17 years of age, 6 feet tall, and weighing 146 pounds.

In his defense, defendant offered several stipulations concerning interviews conducted by police with Smith, Bridges, and Glover, and the reports they prepared based on these conversations, for purposes of impeaching the descriptions of the assailant provided by the State's witnesses.

Following closing arguments and jury deliberations, defendant was convicted of armed robbery and attempted aggravated criminal sexual assault, and was sentenced to concurrent prison terms of 25 years and 15 years, respectively.

## ANALYSIS

■ As noted, defendant asserts error in certain remarks made by the prosecutor in closing. As a general principle, a prosecutor is afforded considerable latitude in his closing and rebuttal arguments and may argue to the jury facts and reasonable inferences from the evidence. *People v. Kliner*, 185 Ill. 2d 81, 151, 705 N.E.2d 850, 885 (1998); *People v. Montefolka*, 287 Ill. App. 3d 199, 212, 678 N.E.2d 1049, 1057-58 (1997) The trial court has the discretion to determine the proper character, scope and prejudicial effect of closing arguments. *Kliner*, 185 Ill. 2d at 151, 705 N.E.2d at 885.

In rebuttal arguments, the prosecutor explained in his own words the differences between a witness's ability to describe and ability to recognize an individual, stating:

> "Now, let's talk about description versus recognition. A description is a person's ability to describe something, to say something, to use words to characterize something. On August 1, 1997, a nurse walked into a hospital room and told me my son wasn't going to make it.
>
> * * *
>
> At that time, I cannot tell you what she looked like. But I know that I would recognize her in a heart beat. But today I would tell her she was wrong."

Also during rebuttal, the prosecutor responded to certain remarks of defense counsel about the purported discrepancies between the stipulated information in the police reports and descriptions provided by certain State witnesses of the man who attacked them. According to defense counsel, these alleged discrepancies suggested that the State's witnesses were mistaken in their identification of defendant as their offender. In response, the prosecutor stated in part:

> "Let's talk about something because there is something [defense counsel] talked about that we didn't show. Let's talk about police reports. Guess how many police reports you're going to get with you when you go back to that jury room?

\* \* \*

You're not getting any. You know why[?]

\* \* \*

They're not evidence. You see if I had my way, I would hand you all these police reports and say you go back in there and say he's guilty[.]"

The prosecutor further explained that the reports were not evidence and that our legal system requires the jury in most cases to view a witness's testimony and to judge that witness's credibility.

■ First, citing *People v. Hayes*, 183 Ill. App. 3d 752, 539 N.E.2d 355 (1989), defendant contends the prosecutor's analogy to his ailing son improperly interjected his personal experience before the jury and only served to bolster the testimony of its only occurrence witness. Generally, a prosecutor may not vouch for the credibility of a witness or express personal opinions about the case. The prosecutor may comment on a witness's credibility only if the remarks are based on fair inferences from the evidence. *People v. Barraza*, 303 Ill. App. 3d 794, 797, 708 N.E.2d 1256, 1258 (1999); *Hayes*, 183 Ill. App. 3d at 756, 539 N.E.2d at 358.

In *Hayes*, the defendant was convicted of aggravated criminal sexual assault and kidnapping. At trial, the victim testified that the defendant attacked and sexually assaulted her as she was walking to a gas station to buy cigarettes. In closing arguments, the prosecutor shared with the jury a personal experience, similar to the victim's case, in which she was similarly followed by a man as she walked to the store to buy cigarettes. This court held that the prosecutor's discussion of her experience was error because it improperly bolstered the victim's credibility and improperly appealed to the passions and prejudices of the jury. *Hayes*, 183 Ill. App. 3d at 756, 539 N.E.2d at 358. According to the court, the prosecutor's remarks exceeded any comment on the evidence and suggested that her previous experience was somehow relevant to the jury's decision, thereby injecting improper and irrelevant consideration into the jury's deliberations. *Hayes*, 183 Ill. App. 3d at 757, 539 N.E.2d at 358. The court additionally explained that the prosecutor "strongly implied that the victim's testimony should be believed because [she] too had faced a dangerous neighborhood on a late night, a short trek for cigarettes, and the fear of being attacked by a man chasing her." *Hayes*, 183 Ill. App. 3d at 757, 539 N.E.2d at 358.

More recently, in *Barraza*, 303 Ill. App. 3d at 798, 708 N.E.2d at 1259, the court similarly found that the recitation of a personal story by the prosecutor during closing was improper. There, the defendant was convicted of aggravated criminal sexual abuse of two minor chil-

dren. In his closing argument, defense counsel suggested that the testimony of the two minor victims were not credible because they waited more than two years before reporting the incidents involving defendant. In rebuttal, the prosecutor provided a lengthy account of a conversation he had had with his 10-year old daughter concerning sexual abuse. The prosecutor stated that despite advising his daughter to tell him if she ever was touched inappropriately, she stated she would not tell anyone if such a situation occurred because she would be too uncomfortable to talk about it.

Relying on *Hayes*, the *Barraza* court held the prosecutor's comments were improper because they attempted to bolster the minor victims' credibility and to elicit sympathy for them. *Barraza*, 303 Ill. App. 3d at 798, 708 N.E.2d at 1259. According to the court, the facts surrounding the prosecutor's conversation with his daughter were not in evidence and "could only serve to improperly bolster the victims' credibility by implying that any child might be reluctant to discuss sexual abuse." *Barraza*, 303 Ill. App. 3d at 798, 708 N.E.2d at 1259.

■ Like the arguments in *Hayes* and *Barraza*, the prosecutor's remarks in this case concerning the situation of his son, albeit somewhat more subtle than the prosecutorial comments in the foregoing cases, were improper because they served only to bolster the credibility of the victim and her testimony. The record is devoid of any facts relating to this experience, and we find the prosecutor's analogy could only operate to have enhanced the victim's credibility by suggesting that all people, particularly Smith, shared the same ability as the prosecutor to identify an individual regardless of the circumstances under which the identification occurred. The implication before the jury was that Smith was able to easily recognize defendant as her offender because the prosecutor could easily recognize his son's nurse. As presented, the prosecutor's remarks improperly suggested that his ability to recognize a nurse was somehow relevant to the jury's decision regarding Smith's ability to recognize her assailant.

■ We also agree with defendant that the prosecutor's comments about the police reports were equally erroneous. A prosecutor exceeds the bounds of permissible argument where he comments on facts that are inadmissible or where he suggests that evidence of guilt existed but that, because of its inadmissibility, it cannot be heard by the jury. *People v. Emerson*, 97 Ill. 2d 487, 497, 455 N.E.2d 41, 45 (1983). As noted by our supreme court, "an insinuation that leaves the jury to speculate may be more prejudicial than erroneously admitted specific proof." *Emerson*, 97 Ill. 2d at 497, 455 N.E.2d at 45.

Contrary to the State's assertion, the prosecutor's statements were not an invited response and went far beyond defense counsel's

comments about the reports. The police reports could be used, as the defense did, for impeachment purposes, but could not be used as substantive evidence against defendant. *People v. Sutton*, 260 Ill. App. 3d 949, 961, 631 N.E.2d 1326, 1335 (1994). The prosecutorial remarks at issue improperly imply that the defense intentionally kept the reports from the jury and that they contained information that would have unequivocally established defendant's guilt and made a trial unnecessary. See *People v. Ray*, 126 Ill. App. 3d 656, 661-62, 467 N.E.2d 1078, 1082-83 (1984) (finding prosecutor committed error where he told the jury in closing that " 'I have all of this that says' " the accused lied, and that " 'I wish I could give you my file as you sit there to go back in there, but I'm not allowed to because that is the law,' " because these comments suggested the prosecutor was referring to evidence that was unpresented).

■ Improper remarks in argument by counsel generally do not constitute reversible error. However, where such remarks are found to have substantially prejudiced the defendant in that they were a material factor in his conviction, that is, where the decision would have been different had the remarks not been made, reversal for a new trial is warranted. *Montefolka*, 287 Ill. App. 3d at 212, 678 N.E.2d at 1058. In determining whether the requisite substantial prejudice exists, the court must consider the content and context of the language, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial. *Kliner*, 185 Ill. 2d at at 151-52, 705 N.E.2d at 886.

■ In this case, the evidence against defendant was not overwhelming. The State's case rested primarily on the victim's credibility and relied greatly on her identification testimony. As stated by this court in *Hayes*, "[w]hile a jury could find [the victim's] testimony alone sufficient to find defendant guilty beyond a reasonable doubt, defendant has the right to not have that credibility significantly bolstered by improper prosecutorial argument." *Hayes*, 183 Ill. App. 3d at 757-58, 539 N.E.2d at 359. The introduction of the other crimes evidence does not alter our analysis. Based on these reasons, we find the jury's decision might have been different had the challenged remarks not been made and that defendant was substantially prejudiced by their presentation. We therefore reverse defendant's conviction and remand for a new trial.

Pursuant to *People v. Taylor*, 76 Ill. 2d 289, 391 N.E.2d 366 (1979), we have reviewed the record and conclude that the evidence was sufficient to prove defendant's guilt for the charged offenses beyond a reasonable doubt. Therefore, principles of double jeopardy do not bar defendant's retrial. Because we reverse and order a new trial, we will

review defendant's contention that the trial court erred in allowing the State to present evidence of other crimes through the testimonies of Bridges and Glover since that matter is likely to resurface on remand.

■ Generally, evidence of other crimes is inadmissible to establish the accused's disposition or propensity to commit such conduct. *People v. Robinson*, 167 Ill. 2d 53, 62, 656 N.E.2d 1090, 1094 (1995). Such evidence is admissible, however, when relevant to establish any material question other than a propensity to commit the crime and provided a similarity exists between the other crimes and the offense for which defendant is charged. *People v. Evans*, 125 Ill. 2d 50, 82, 530 N.E.2d 1360, 1374 (1988). Evidence of other crimes is permissible and frequently introduced to establish an accused's identity, *modus operandi*, intent, and absence of mistake. *Kliner*, 185 Ill. 2d at 146, 705 N.E.2d at 883. Even where relevant for a permissible purpose, the probative value of the other crimes evidence must be weighed against its risk of prejudice to defendant and should be excluded where its prejudicial effect substantially outweighs its probative value. *Kliner*, 185 Ill. 2d at 146, 705 N.E.2d at 883; *People v. Illgen*, 145 Ill. 2d 353, 364-65, 583 N.E.2d 515, 519 (1991).

■ Although we have reservations as to whether the evidence of defendant's other crimes was relevant to establish his intent and lack of mistake since those matters were not in question at trial, we agree with the State that this evidence was relevant to establishing defendant's identity under the *modus operandi* theory. The *modus operandi* exception has been described as circumstantial evidence of identity on the basis that crimes committed in a similar manner suggest a common author and strengthens the identification of the defendant. *People v. Bragg*, 277 Ill. App. 3d 468, 478, 659 N.E.2d 1378, 1386 (1995). Where such evidence is offered to prove *modus operandi*, "there must be a high degree of identity between the facts of the crime charged and the other offenses in which the defendant was involved." *Illgen*, 145 Ill. 2d at 372-73, 583 N.E.2d at 523. While a persuasive showing of similarity must be made, the test is not one of " 'exact, rigorous identity,' " since " 'some dissimilarity will always exist between independent crimes.' " *Robinson*, 167 Ill. 2d at 65, 656 N.E.2d at 1094, quoting *People v. Phillips*, 127 Ill. 2d 499, 520-21, 538 N.E.2d 500 (1989), and *People v. Taylor*, 101 Ill. 2d 508, 521, 463 N.E.2d 705 (1984). The crimes must generally share features that are highly distinctive, unique or peculiar so as to earmark the acts as the handiwork of the same person. *Illgen*, 145 Ill. 2d at 373, 583 N.E.2d at 523.

Smith's identification of defendant as her assailant was a material

issue in the case. During the cross-examination of Smith, and prior to the introduction of the other crimes evidence, defense counsel persistently challenged Smith's identification of defendant as her offender. Further, throughout her closing remarks, defense counsel questioned the strength of the State's evidence regarding the identity of defendant and argued to the jurors that the evidence was insufficient to show that defendant was Smith's attacker. See *People v. Bowman*, 227 Ill. App. 3d 607, 613, 592 N.E.2d 240, 244 (1992) (stating that the introduction of other crimes evidence is proper to bolster the defendant's identification when the identity of defendant is at issue).

The record sufficiently demonstrates the requisite similarity between the other crimes and the charged offenses so as to earmark the crimes as the handiwork of defendant. Each incident involved an attack on a young woman located in the same geographical area and occurring within the same two-week period. Each victim was initially approached from behind while standing on the street, at or near a bus stop. While the time of the attacks varied, *i.e.*, one attack took place in the early evening while the other two happened in the early morning, each attack occurred when it was dark. The offender in each case wore clothing that was strikingly similar to the clothing recovered from defendant's possession; threatened to shoot each victim if she failed to comply with his demands; and demanded money and sex from two of them. A feature we find highly unique, and not common to such offenses, is the perpetrator's utterance of the same ultimatum to two of his victims that they "had to give him some pussy or he would shoot" them. The victims' descriptions of the perpetrator to police immediately after the incidents, while different, nevertheless represent a reasonable description of defendant. Moreover, each victim identified defendant as her assailant in a pretrial lineup and later at trial. While differences in the other crimes and the charged offenses exist, the similarities of these crimes, when viewed together, are sufficiently distinctive to raise the inference that defendant was the assailant in each case.

The case law cited by defendant is unavailing because in two of those decisions the evidence disclosed a substantial number of significant dissimilarities between the other crimes and the offenses charged (see *People v. Connolly*, 186 Ill. App. 3d 429, 434-35, 542 N.E.2d 517, 521 (1989) (charged offense and other crime occurred in different towns, were three years apart, involved different establishments, and reflected features common of that type of crime); *People v. Triplett*, 99 Ill. App. 3d 1077, 1083, 425 N.E.2d 1236, 1241 (1981) (crimes committed three months and several miles apart, one committed on the

pretext of borrowing money while other was not, first offense involved two offenders and used a green two-door sedan whereas second involved only a single offender and the use of a green station wagon)), and in the other case the identity of the accused was never at issue (see *People v. Barbour*, 106 Ill. App. 3d 993, 998, 436 N.E.2d 667, 673 (1982)).

Should Smith's ability to identify her offender as defendant arise again during retrial, the State may properly present the evidence of other crimes discussed above to bolster its proof of identity. We note the trial court here explained the nature and limited purpose of the other crimes evidence for the jury when the evidence was first presented and again before deliberations. Given the high risk of prejudice other crimes evidence brings to a defendant's case, the practice employed by the trial court is strongly favored, and we strenuously encourage the trial court on remand to likewise adopt this procedure. See *People v. Denny*, 241 Ill. App. 3d 345, 360-61, 608 N.E.2d 1313, 1324 (1993).

## CONCLUSION

For the foregoing reasons, we reverse defendant's convictions and sentences and remand for a new trial.

Reversed and remanded for new trial.

BURKE, J., concurs.

PRESIDING JUSTICE CAHILL, dissenting:

I respectfully dissent. The majority has seized on a personal anecdote of the prosecutor and a reference to police reports in closing argument to reverse a jury verdict. This is not a case where cumulative error compels a due process analysis such as our supreme court undertook in *People v. Blue*, 189 Ill. 2d 99 (2000). It is not a case such as *People v. Green*, 74 Ill. 2d 444, 386 N.E.2d 272 (1979), where the errors at trial are of such gravity that the integrity of the judicial process is threatened.

The majority opinion here fairly sets out the facts of the case and does not quarrel with the evidence admitted: Ida Smith identified her attacker in a lineup within days of the incident. At the police station she identified a coat and hat recovered from defendant's home as the coat and hat worn by her attacker. Two other witnesses identified defendant at trial and testified to strikingly similar attacks. The three similar attacks took place over a span of 11 days in January 1996. The majority concedes that, absent the alleged errors, the evidence was

sufficient to establish defendant's guilt beyond a reasonable doubt. The thrust of the opinion is that remarks of the prosecutor about a personal experience and a reference to police reports (which the State insists were invited by defense counsel) are enough to justify a new trial.

As the State pointed out in its appellate brief, defendant's comparison of the remarks of the prosecutor in this case to those of the prosecutor in *People v. Hayes*, 183 Ill. App. 3d 752, 539 N.E.2d 355 (1989), and *People v. Barraza*, 303 Ill. App. 3d 794, 797, 708 N.E.2d 1256, 1258 (1999), ignores the critical factual differences between the cases. In *Hayes* and *Barraza*, the prosecutors made reference to the impact the kind of crime charged had on their own lives. In *Hayes*, a sexual assault case, the prosecutor melodramatically described her own near-rape experience. In *Barraza*, also a sexual abuse case, the prosecutor referred to a conversation he had with his daughter about sexual abuse. Here, the prosecutor described an incident with his son to set up an analogy that stressed the difference between identification based on physical description and one based on recognition. His experience did not relate to the crimes charged in the case. He did not indulge in the kind of melodramatic pathos (as in *Hayes*) designed to transfer sympathy from himself to the victim. He did not, as in *Hayes* and *Barraza*, refer to the crimes with which defendant was charged as part of his own experience.

The test for reversing a conviction based on the remarks of a prosecutor is well settled: "*whether the jury would have reached a contrary verdict* had the improper remarks not been made." (Emphasis added.) *People v. Heard*, 187 Ill. 2d 36, 73, 718 N.E.2d 58 79 (1999). It is perhaps even more forcefully put in *People v. Cisewski*, 118 Ill. 2d 163, 514 N.E.2d 970 (1987). "To constitute reversible error, the complained-of remarks must have resulted in substantial prejudice to the accused, such that *absent those remarks the verdict would have been different*." (Emphasis added.) *Cisewski*, 118 Ill. 2d at 175, 514 N.E.2d at 976, citing *People v. Morgan*, 112 Ill. 2d 111, 132, 492 N.E.2d 1303, 1311 (1986). This is not a standard of recent invention:

> "Complaints of improper arguments of counsel have frequently been considered by this court and judgments have sometimes been reversed on account of them. In *Gallagher v. People*, 211 Ill. 158, [169, 71 N.E. 842, 847 (1904)], the court said ***: 'It is very difficult to lay down an inflexible rule as to the proper limit of an argument upon the facts and circumstances of a case, and unless the court can see that statements are unprovoked or so foreign to the case *as to be calculated to produce a result which otherwise would not have been reached, a judgment of conviction will not be reversed on that ground.*'" (Emphasis added.) *People v. McCann*, 247 Ill. 130, 170, 93 N.E. 100, 114 (1910).

*McCann,* decided by our supreme court in 1910, contains an excellent survey of the standard, which dates to at least 1888.

The majority conclusion that the verdict "might" have been different if the remark had not been made misstates the standard as set out by the supreme court and by the case the majority cites, *People v. Montefolka,* 287 Ill. App. 3d 199, 212, 678 N.E.2d 850, 885 (1997). A quibble over "would" and "might" in contexts that do not involve the reversal of jury verdicts "might" be just that—a quibble. But in a case such as this, where the evidence of guilt is very strong, and the remarks of the prosecutor are well below an inflammatory level, a reversal suggests a relaxed standard of review that the supreme court has never endorsed, except in rare cases, such as *Blue,* where cumulative error infected the entire trial. I would not reverse this case, because I do not believe a reasonable jury who heard the evidence in this case would have acquitted this defendant, but for the remarks of the prosecutor.