THIRD DIVISION
 February 20, 2002

No. 1-01-0093

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellee, ) Cook County.
 )
 v. )
 )
ROBERT JONES, ) Honorable

 )
 Colleen McSweeney
 Moore,

 Defendant-Appellant. ) Judge Presiding.

 JUSTICE WOLFSON delivered the opinion of the court:
 If anything, Robert Jones was a model of consistency. The
evidence in this case showed he used the same car with the same
license plate when he committed three similar armed robberies within
four hours in the same general area of Chicago.
 He was tried for the first of the three armed robberies. The
State was allowed to introduce evidence of the other two armed
robberies in order to prove his identity in the charged offense.
 Following a bench trial, the defendant was found guilty of the
armed robbery of Elaine Ramos Rackos and sentenced to serve a term of
natural life imprisonment as an habitual offender pursuant to the
provisions of the Habitual Criminal Act (720 ILCS 5/33B-1 et seq.
(West 1994)).
 The defendant appeals, contending (1) the trial court erred in
allowing the State to present evidence of other crimes, and (2) the
mandatory life sentence provisions of the Habitual Criminal Act (the
"Act") (720 ILCS 5/33B-1 et seq. (West 1994)) are unconstitutional
under Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S.
Ct. 2348 (2000). We affirm.
FACTS
 Before trial, the trial court made a ruling that is the basis of
the first issue on appeal: the trial court said, over defense
objection, it would allow the State to present evidence the defendant
used a white Ford Tempo with license plate number LWJ 457 in the
uncharged armed robberies of Tim Sallee and Sutha Suesuntisook. The
Ford Tempo was alleged to be the same car the defendant used four
hours earlier in his armed robbery of Elaine Ramos Rackos. The
robberies of Sallee and Suesuntisook would come in as other uncharged
crimes evidence, relevant to the defendant's "identity and presence"
at the scene of the robbery of Rackos.
 The trial then began.
 At trial, Elaine Ramos Rackos testified that on March 1, 1995,
at about 8:00 p.m., she was walking to her car after shopping at the
Target store located at 2656 North Elston. As she was putting her
shopping bags into her car, she heard a car stop suddenly behind her.
She turned and saw the defendant get out of his car and run toward her
with a gun in his hand. Although the defendant had partially covered
the gun with a "white-ish yellow towel," Rackos could see its barrel.

 The defendant ran up to Rackos and pointed the gun at her
stomach. He said, "Don't move. Don't do anything," and demanded
money from her. Rackos said the defendant was right in her face and
the parking lot was "very well lit."
 Rackos opened her wallet and gave the defendant about $70.
After she told the defendant she had no more money, the defendant ran
to his car and drove away. As he drove away, Rackos looked at his
car, specifically its license plate, then ran into Target and told the
security people, "I was mugged in the parking lot." She kept
repeating the license plate number over and over.
 When police arrived at the Target store, Rackos gave them the
license plate number "LWJ 457."
 Rackos testified that one month later, on April 3, 1995, she
went to Area 5 to view a lineup. When the curtains were opened, she
recognized the defendant. "That is him," she said. She identified
Robert Jones as the man who robbed her.
 On cross-examination, Rackos insisted that she had seen a gun
during the robbery. She said, "He had a gun underneath a towel." She
denied telling the police she saw an "unknown, possible handgun
barrel." She insisted she had told the police a man with a gun robbed
her.
 Rackos also denied she told the police the man who robbed her
was "30 years old." She said she was not that specific. She said she
told the police, "The man was in his 30's." And she denied she told
the police the man who robbed her was exactly six feet tall. She
recalled she told them "he was taller than me. *** He was more than 6
feet tall."
 Rackos admitted she did not tell the police the man who robbed
her had a scar or a defined mustache. Instead, she told them, "He had
some sort of marks on his face" and "stubbles."
 Tim Sallee drove fuel tankers for W. Smith Cartage Company. His
job was to deliver gasoline to gas stations. On March 1, 1995, at
about 11:55 p.m., roughly four hours after the Rackos robbery, Sallee
was at the Gelanias Shell Service Station on the corner of Halsted and
Wrightwood. He was unloading gasoline from his fuel tanker when a man
he identified as the defendant Robert Jones robbed him at gunpoint.
 Sallee testified the first time he saw the defendant was when
the defendant drove into the gas station from Halsted. He was driving
a Ford Tempo. He drove the Tempo past Sallee's fuel tanker, toward
the gas station store, exited the gas station on Wrightwood, reentered
the gas station from another driveway on Halsted, and finally stopped
the car parallel to two fuel pumps next to Sallee's tanker. The
defendant then exited the Tempo, stepped between the two fuel pumps,
and asked Sallee for change.
 Sallee told the defendant he had no change. The defendant
replied, "I got something to show you," and showed Sallee a handgun.
Sallee could see the grip, the chamber, and part of the barrel.
Sallee said the defendant used a "dirty old yellow kitchen towel" to
cover part of the handgun.
 The defendant, pointing the handgun at Sallee's hip, said, "Give
me the money." Before Sallee could respond, the defendant put his
left hand on Sallee's right shoulder and turned him toward the fuel
tanker. He forced Sallee to face the tanker and rest his hands on the
rocker panel of the tanker's door.
 The defendant, holding the gun in his right hand, used his left
hand to frisk Sallee's coat pockets, front chest shirt pockets,
waistband, and front pants pockets. The defendant then reached into
Sallee's left rear pants pocket and removed Sallee's wallet. He
handed Sallee his wallet and ordered Sallee to open it. Sallee did.
 Sallee gave the defendant five dollars ($5) from his wallet.
The defendant then asked "where the truck money was." Sallee
responded, "We don't carry money on the trucks." The defendant
replied, "Don't make me pop you." Sallee told him "if he pulled the
trigger, he'd blow us both off the corner."
 The defendant returned to the Ford Tempo and drove northbound on
Halsted. Sallee said the license plate on the Tempo was "LWJ 457."
 Sutha Suesuntisook had a home at 2742 North California. On
March 2, 1995, at about 12:10 a.m., minutes after the Sallee robbery,
Suesuntisook was parking her car in a three-car parking garage next to
her home when a man in a white car pulled into her garage and blocked
her in. She identified him as the defendant Robert Jones. She
testified the defendant got out his car, pulled out a handgun, and
demanded money from her.
 Suesuntisook started to grab change from the coin tray in the
car, but the defendant said, "Not that money." He demanded "real
money." She gave the defendant a five-dollar bill and some singles,
totaling about ten dollars ($10). Suesuntisook said the defendant
then took her car and left behind his white car.
 Detective Fernando E. Montilla, a Chicago police robbery
specialist, testified he had been assigned to the robbery of Elaine
Rackos Ramos on March 1, 1995. Detective Montilla said he recovered a
beige Ford Tempo, license plate number LWJ 457, from the area where
Suesuntisook said she was robbed. He also said the defendant Robert
Jones was a suspect in all three robberies and was identified by
Rackos, Sallee, and Suesuntisook in three different lineups held on
April 3, 1995.
 On cross-examination, Detective Montilla said that the
defendant's height was six feet, three inches, that he weighed 180
pounds, and that he was 43 years old. Detective Montilla noted his
arrest report showed the defendant had a scar on his left cheek.
 The defendant called, in his defense, three witnesses -- three
police officers. First, Officer Barbara LeBron testified she
responded to Tim Sallee's call for police to 2600 North Halsted.
Sallee had reported he was held up. Officer LeBron said that during
her interview of Sallee, he did not tell her the robber threatened to
"pop him."
 Second, Officer Annette Ruiz testified she was called to a gas
station on North California to interview Sutha Suesuntisook.
Suesuntisook had reported she was robbed. Officer Ruiz said
Suesuntisook could not remember whether the man who robbed her had any
marks or scars on his face because everything happened so quickly.
 Finally, Officer John Nowik testified he was called to the
Target Store at 2656 North Elston to interview Elaine Ramos Rackos.
Officer Nowik noted in his police report that Rackos told him she was
robbed by a man, 30 years old, holding an "unknown possible handgun
barrel." On cross-examination, Officer Nowik said he used the word
"unknown" to signify Rackos did not know whether it was a handgun or a
pistol. He added that in two other places in his police report he
noted an armed robbery had occurred and that Rackos did not express
any doubt that a gun was pointed at her during the course of her
robbery.
 After hearing closing arguments, the trial court found the
defendant guilty of armed robbery. At the sentencing hearing, the
State petitioned for imposition of a natural life sentence pursuant to
the Habitual Criminal Act. The trial court concluded that under the
Habitual Criminal Act, the appropriate sentence in this case was
natural life, without the possibility of parole.
 This appeal followed.
DECISION
 Other Crimes Evidence
 Other uncharged crimes evidence is admissible if relevant for
any purpose other than to show the defendant's disposition or
propensity to commit crime. People v. Bedoya, 325 Ill. App. 3d 926,
937, 758 N.E.2d 366 (2001), citing People v. McKibbins, 96 Ill. 2d
176, 182, 449 N.E.2d 821 (1983). Examples of relevant purpose include
modus operandi, intent, identity, motive, or absence of mistake.
Bedoya, 325 Ill. App. 3d at 937. The list is not exclusive.
 Evidence is relevant if it has any tendency to make the
existence of a fact that is of consequence in the case more probable
or less probable than it would be without the evidence. People v.
Green, 322 Ill. App. 3d 747, 757, 751 N.E.2d 10 (2001). When the
trial court finds some relevance in the other crimes evidence, it must
then conduct a balancing test. Relevant evidence should be excluded
if its probative value is substantially outweighed by the danger of
unfair prejudice. People v. Stewart, 105 Ill. 2d 22, 62, 473 N.E.2d
840 (1984).
 The danger of presenting evidence to establish the defendant's
propensity to commit a crime is that it "overpersuades the jury, which
might convict the defendant only because it feels he or she is a bad
person deserving punishment." People v. Lindgren, 79 Ill. 2d 129,
137, 402 N.E.2d 238 (1980).
 The admissibility of other crimes evidence rests within the
sound discretion of the trial court and will not be overturned absent
a clear abuse of discretion. People v. Placek, 184 Ill. 2d 370, 385,
704 N.E.2d 393 (1998). "The trial court should not permit a 'mini-
trial' of the other, uncharged offense, but should allow only that
which is necessary to 'illuminate the issue for which the other crime
was introduced.' " Bedoya, 325 Ill. App. 3d at 938, quoting People v.
Nunley, 271 Ill. App. 3d 427, 432, 648 N.E.2d 1015 (1995).
 The defendant contends the trial court erred by allowing the
State to present evidence relating to the armed robberies of Tim
Sallee and Sutha Suesuntisook. Specifically, the defendant contends
the evidence was "admitted only to show Mr. Jones' propensity [to
commit crimes] and to enhance the credibility of the complainant."
 The State responds the court properly admitted the evidence of
two other robberies because that evidence was relevant to establishing
the defendant's identity under a modus operandi theory. We agree.
 "The modus operandi exception has been described as
circumstantial evidence of identity on the basis that crimes committed
in a similar manner suggest a common author and strengthens the
identification of the defendant." People v. Shief, 312 Ill. App. 3d
673, 681, 728 N.E.2d 638 (2000). Where such evidence is offered to
prove modus operandi, "there must be a high degree of similarity
between the facts of the crime charged and the other offenses in which
the defendant was involved." People v. Illgen, 145 Ill. 2d 353, 372-
73, 583 N.E.2d 515 (1991).
 "While a persuasive showing of similarity must be made, the test
is not one of 'exact, rigorous identity,' since 'some dissimilarity
will always exist between independent crimes.' [Citations omitted.]"
Sheif, 312 Ill. App. 3d at 681. The offenses must generally share
features that are highly distinctive, unique, or peculiar so as to
trademark the acts as the handiwork of the same person. Illgen, 145
Ill. 2d at 372-73.
 Rackos' identification of the defendant as her robber was the
material issue in the case. During the cross-examination of Rackos,
defense counsel challenged her identification of the defendant.
Further, throughout opening and closing remarks, defense counsel
questioned the strength of the State's evidence regarding the identity
of the defendant, and argued that, ultimately, the evidence was
insufficient to show the defendant was Rackos' robber. See People v.
Bowman, 227 Ill. App. 3d 607, 613, 592 N.E.2d 240 (1992) (The
introduction of other crimes evidence is proper to bolster the
defendant's identification when the identity of the defendant is at
issue).
 The question, then, is whether the record demonstrates the
requisite similarity between the other crimes and the charged offense
so as to trademark all the crimes as the handiwork of the defendant.
 In People v. Sheif, 312 Ill. App. 3d 673, 728 N.E.2d 638 (2000),
evidence of the defendant's other crimes was relevant to establishing
his identity under the modus operandi theory where, in a prosecution
for armed robbery and attempted aggravated criminal sexual assault,
both the charged offenses and the other crimes involved attacks on
young women located in the same geographical area and occurring within
the same two-week period; the offender in each case wore clothing
strikingly similar to clothing recovered from the defendant's
possession; the offender threatened to shoot each victim if she failed
to comply with his demands of money and sex; and each victim
identified the defendant as her assailant in a pre-trial lineup and
later at trial.
 In People v. De La Fuente, 92 Ill. App. 3d 525, 533, 414 N.E.2d
1355 (1981), evidence of a robbery that occurred 15 minutes before the
robbery charged was admissible as relevant to establish the
defendant's identification, presence, intent, knowledge, and design,
because the two robberies occurred within three blocks of another;
both robberies involved the use of a small handgun as a bludgeon by
the wielder; and the descriptions of the perpetrators of both
robberies were nearly identical.
 In People v. Allen, 28 Ill. App. 3d 815, 819, 329 N.E.2d 473
(1975), evidence of an attempted robbery was, in the prosecution for
armed robbery, admissible on the issue of the defendant's
identification and scheme or design where, among other things, both
the attempted robbery and the crime charged occurred within about one
hour of each other in contiguous suburbs; the witness to the attempted
robbery and the victim of the crime charged described the weapon used
as a pistol; the witness described the automobile used in the
attempted robbery as being the same color and make as that stolen from
the victim of the crime charged; and both the victim of the crime
charged and the witness to the attempted robbery testified that the
robbers asked the same question about the location of the highway
before displaying a gun.
 Similarly, here, each incident involved the armed robbery of a
person located in the same geographical area; each incident occurred
during a four-hour period -- from 8:00 p.m. on March 1, 1995, to 12:10
a.m. on March 2, 1995 --; each victim was initially approached while
alone and near his or her vehicle; each victim gave the robber money
after he demanded it in a similar way; each victim's description of
the robber to the police immediately after the incidents, while
somewhat different, represented a reasonably-close description of the
defendant; and each victim identified the defendant as the robber in a
pre-trial lineup and later at trial.
 A feature we find distinctive in each offense is the robber's
use of a light colored Ford Tempo with the license plate number LWJ
457. Both Rackos and Sallee testified to seeing the license plate
number, and Detective Montilla testified to recovering a Ford Tempo
with the same license plate number from the area where Suesuntisook
said she was robbed.
 While differences in the uncharged other crimes and the charged
offenses exist -- e.g., the robber's gun was covered with a "dirty old
yellow" kitchen towel or a "white-ish yellow" towel in the robberies
of Rackos and Sallee but not Suesuntisook --, the similarities of
these crimes, when viewed together, are sufficiently distinctive to
support the inference the defendant was the robber in each case. See
People v. Lee, 151 Ill. App. 3d 510, 524, 502 N.E.2d 399 (1986) (There
was a substantial similarity between two shootings where both occurred
within several blocks and within four hours of each other; both
involved a small caliber gun; and both victims were shot in the head
despite the fact they had cooperated with their assailant); and People
v. Bryan, 159 Ill. App. 3d 46, 51-52, 511 N.E.2d 1289 (1987)
(substantial similarities were found among three robberies where all
took place on the same block, within the same 12-day period; the
defendant used the same type of gun; he wore the same clothing; he
gave similar commands; he escaped in the same direction; and he
approached women who were initially alone).
 We find the trial court did not abuse its discretion by allowing
the State to present evidence of the other uncharged crimes for
purposes of establishing the defendant's identity.
 The defendant also contends: "If, however, this court should
find some degree of testimony was permissible to show identity and
presence, the State still improperly elicited from Sallee and
Suesuntisook extraneous and prejudicial detail."
 We disagree. Only enough evidence to establish the required
similarities was presented. There was no unnecessary detail.
 This was a bench trial. The trial court said it was allowing
the other crimes evidence to show the defendant's "identity and
presence," not his "propensity to commit the crime." Both were issues
in the case. The trial court did not abuse its discretion.
 Sentencing
 The defendant's final contention is that his life sentence is
unconstitutional under Apprendi. In Apprendi, the Supreme Court held
that any fact, other than a prior conviction, that increases the
maximum penalty for a crime must be charged in an indictment,
submitted to a fact-finder, and proved beyond a reasonable doubt.
Apprendi, 530 U.S. at 466, 147 L. Ed. at 447, 120 S. Ct. at 2354.
 The defendant committed a Class X felony, for which the maximum
prison sentence is 30 years. See 730 ILCS 5/5-8-1(a)(3) (West 2000).
He was sentenced to life imprisonment, however, because the court
found him to be an habitual criminal. See 720 ILCS 5/33B-1(a), (e)
(West 2000). Section 33B-1 of the Habitual Criminal Act provides as
follows:
 " § 33B-1. (a) Every person who has been twice convicted in any
 state or federal court of an offense that contains the same
 elements as an offense now classified in Illinois as a Class X
 felony, criminal sexual assault, aggravated kidnapping or first
 degree murder, and is thereafter convicted of a Class X felony,
 criminal sexual assault or first degree murder, committed after
 the 2 prior convictions, shall be adjudged an habitual criminal.
 (b) The 2 prior convictions need not have been for the same
 offense.
 (c) Any convictions which result from or are connected with the
 same transaction, or result from offenses committed at the same
 time, shall be counted for the purposes of this Section as one
 conviction.
 (d) This Article shall not apply unless each of the following
 requirements are satisfied:
 (1) the third offense was committed after the effective date of
 this Act;
 (2) the third offense was committed within 20 years of the date
 that judgment was entered on the first conviction, provided,
 however, that time spent in custody shall not be counted;
 (3) the third offense was committed after conviction on the
 second offense;
 (4) the second offense was committed after conviction on the
 first offense.
 (e) Except when the death penalty is imposed, anyone adjudged
 an habitual criminal shall be sentenced to life imprisonment."
 720 ILCS 5/33B-1 (West 2000).

 Here, the defendant met all of the conditions for a mandatory
natural life sentence under the Act, rather than the normal Class X
sentencing range, which is from 6 to 30 years.
 Recently, courts in the Fifth, Third, and Second districts of
the Illinois Appellate Court held the Act does not violate Apprendi.
See People v. Pickens, 323 Ill. App. 3d 429, 752 N.E.2d 1195 (2001)
(5th Dist.); Morissette v. Briley, No. 3--01--0193, slip op. at 3
(December 12, 2001) (3rd Dist.); People v. Boston, 324 Ill. App. 3d
557, 562-63, 755 N.E.2d 1058 (2001) (2nd Dist.).
 In their Apprendi analysis, the courts drew analogies between
the recidivism provisions in section 33B-1 and the recidivism
provisions of section 5-5-3(c)(8) (730 ILCS 5/5-5- 3(c)(8) (West
2000)).
 Section 5-5-3(c)(8) requires a defendant to be sentenced as a
Class X offender if he has been convicted of two Class 2 or greater
felonies and then is convicted of a Class 1 or Class 2 felony. 730
ILCS 5/5-5-3(c)(8) (West 2000). Section 5-5-3(c)(8) does not violate
Apprendi. People v. Lathon, 317 Ill. App. 3d 573, 740 N.E.2d 377
(2000); People v. Dixon, 319 Ill. App. 3d 881, 747 N.E.2d 1 (2001);
People v. Watson, 322 Ill. App. 3d 164, 749 N.E.2d 1078 (2001).
 Section 33B-1 is not unconstitutional under Apprendi because,
like section 5-5-3(c)(8), "A provision that requires punishment
enhancement based upon the existence of prior convictions does not run
afoul of Apprendi." Pickens, 323 Ill. App. 3d at 434. Accord
Morissette, No. 3--01--0193, slip op. at 4; Boston, 324 Ill. App. 3d
at 563.
 We concur with Pickens, Morissette, and Boston. We hold section
33B-1 does not violate Apprendi, and we affirm the trial court's
sentencing order.
CONCLUSION
 We affirm the trial court's judgment.
 Affirmed.
 HALL, P.J., and SOUTH, J., concur.