2022 IL App (1st) 173034-U

No. 1-17-3034

Order filed May 12, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 DV 70092 |
| | ) | |
| LAMARN JOHNSON, | ) | Honorable |
| | ) | James P. Murphy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for domestic battery is affirmed where the evidence demonstrated that he hit the victim in the face with his hand, causing a laceration to her lip.

¶ 2    Following a bench trial, defendant Lamarn Johnson was found guilty of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2016)) and two misdemeanor counts of criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2016)). The court subsequently sentenced him to concurrent terms of 180 days' imprisonment. On appeal, Johnson contends that the State failed to

prove him guilty beyond a reasonable doubt of domestic battery, arguing that the victim's testimony was not credible. We affirm.[1]

¶ 3                                    I. JURISDICTION

¶ 4        The trial court sentenced Johnson on October 3, 2017. On November 29, 2017, the trial court denied both Johnson's motion for new trial and his motion to reconsider his sentence. Thereafter, on that same date, Johnson filed a timely notice of appeal. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1980, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017), governing appeals from a final judgment of conviction in a criminal case.

¶ 5                                    II. BACKGROUND

¶ 6        Johnson was charged by misdemeanor complaint with domestic battery. The underlying incident took place in Chicago on January 18, 2017, when he "struck complainant, Andrea Moss, about the mouth with a closed fist, in an insulting or provoking manner, causing a laceration to her upper lip." The same complaint also charged Johnson with two counts of criminal damage to property, for breaking Moss's cell phone and glass table.

¶ 7        At trial, Moss testified that her ex-boyfriend Johnson is the father of her two minor children. On January 18, 2017, she was living at her first-floor apartment on the 1900 block of South Drake Avenue with her children, her fiancé, and, "occasionally," her mother, Adrienne Moss.[2] At the time, Moss saw Johnson once or twice a week, when he would take their children

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[2]As Adrienne Moss has the same last name as the victim Andrea Moss, we hereafter will refer to Adrienne by her first name.

to school, pick them up, or attend their son's basketball games. At about 9 a.m., Moss was in bed taking a nap when she heard the doorbell ring. Next, Moss heard Johnson speaking with Adrienne. Moss was not expecting Johnson that morning.

¶ 8    After Moss heard Adrienne call out to her, Moss got out of bed. She was standing in her bedroom when Johnson "burst" through her door. He approached Moss and yelled at her to "mind [her] F'ing business." As he did so, he pointed at her and hit her face with his fist three times. Moss explained that Johnson's index finger and thumb were pointed upward, while his remaining fingers were in a closed position. She testified that a photograph of the inside of her lip, taken the day after the incident and entered into evidence by the State, depicted "the cut I guess from when he hit me. You can kind of see the scratches."

¶ 9    Moss was "scared" and "shocked" by Johnson's conduct. She stepped back and went to the kitchen. Johnson followed and told her to "[g]et out of my f*** business." He grabbed Moss's cell phone from her, bent it, and stomped on it. He then took a pot from the stove and used it repeatedly to strike the living room table, breaking the glass tabletop. Johnson then knocked Moss's television off its stand and left the apartment. As Moss's phone was broken and Adrienne could not find her phone, Moss traveled to her children's school to obtain her son's phone and called the police as she returned home. The State entered photographs of Moss's broken cell phone and table into evidence. Moss confirmed the photographs accurately depicted the damage to her property.

¶ 10    Moss additionally testified concerning two prior domestic violence incidents involving Johnson. On April 4, 2007, she was in a dating relationship with Johnson when he choked her and hit her "about the face" while at Adrienne's home. As a result, her lip was "messed up" and she

had a black eye. When Johnson left, Moss locked the door and called the police. Johnson then returned, kicked down the door, broke the house phone, and "tore up [the] house." Police officers arrived and arrested Johnson. Moss failed to appear in court, and the charges were subsequently dismissed.

¶ 11 On or about October 6, 2008, Moss and Johnson were returning from a party when they got into a verbal altercation. Johnson ordered Moss out of his vehicle. As she was walking away from the vehicle, Johnson began throwing items at her. He returned to his car, drove next to Moss, and jumped out of his vehicle. He then grabbed Moss by her hair and dragged her to a vacant lot. Johnson proceeded to straddle Moss on the ground and punched her in her face and upper body. Police observed the incident and, following a chase, arrested Johnson. He was convicted of domestic battery and sentenced to 250 days' imprisonment. Following that incident, Moss ended her romantic relationship with Johnson. The State submitted a photograph of Moss into evidence; Moss testified it accurately depicted her facial injuries from the 2008 incident.

¶ 12 On cross-examination, Moss testified that although they had a cordial relationship, she did not allow Johnson inside her home. Moss believed Johnson was upset that morning because "his other baby momma," with whom Moss had been in contact, found out about his "other baby" with a third woman. Moss explained to the police officers that, when Johnson made physical contact with her, he was poking her near her eye with his index finger while punching near her mouth with his other fingers. She denied telling the police officers that her lip was injured when Johnson "took a swipe at a pot on the stove." While Johnson was striking the table with the pot in the living room, Moss was standing nearby in the adjoined kitchen area. She did not seek medical treatment for the injury to her lip.

¶ 13    Adrienne testified that, on the morning of the incident, she answered the door when Johnson knocked. Johnson followed her to Moss's bedroom. Adrienne opened the bedroom door, and a brief verbal confrontation ensued between Johnson and Moss. Adrienne testified she observed Johnson hit Moss once in the face. She further noted, "I think in her face because she was holding her mouth. So he must have hit her in the face." Adrienne urged Johnson to leave. Instead, he took Moss's phone, stepped on it, and "just tore the phone up." He then took a pot off the stove and "kept smashing, smashing, smashing the table" until the thick glass tabletop broke. Adrienne was unable to call 911 because she could not find her phone and Moss's phone was broken.

¶ 14    On cross-examination, Adrienne clarified that she observed Johnson's hand strike Moss and Moss then placed her hand up to her mouth. Adrienne explained that Johnson's "hand wagged like this. So he must have hit her with" the knuckles of his fingers below the index finger.

¶ 15    Chicago police officer Enrique Lopez testified for the defense that, on the morning of January 18, 2017, he responded to Moss's address for a call of criminal damage. When Lopez arrived at the apartment, one woman was present. Lopez testified that his incident report indicated that he arrived at Moss's apartment at 9:25 a.m., and the woman he spoke to was Andrea Moss.

¶ 16    Lopez agreed that Moss told him Johnson committed property damage. He observed broken glass and a television on the floor. However, Lopez testified that Moss neither told him that Johnson had "physically hit" her or punched her in the lip nor did she relay that Johnson had threatened her. When asked whether Moss told Lopez how she was injured, Lopez responded, "[d]uring this verbal altercation I believe he took a swipe at some type of pot. In doing so, the pot flew, hit her in the lip." Moss related nothing further to Lopez regarding the cause of her injury.

¶ 17    On cross-examination, the State asked Lopez whether his report indicated anywhere that the pot struck Moss in the face. Lopez answered affirmatively and quoted the following from his report: "[t]he cooking pot which went airborne struck victim about the lower lip causing laceration and swelling." The State then read the complete sentence from the report, which stated "[t]hat the offender became hostile and turned over the victim's furniture thus breaking a glass table, turned over a television and swiped at a cooking pot which went airborne and struck the victim about the lower lip causing a laceration and swelling." Lopez stated he would not have written that the pot, rather than Johnson's hand, struck Moss's face if she had not told him that. He could not remember where he spoke to Moss, but stated it occurred either in the front room or the dining room. Lopez could not remember if another woman was present after he spoke with Moss.

¶ 18    Before rendering its ruling, the trial court reiterated that Lopez's testimony was introduced solely for impeachment purposes on the domestic battery charge—simply to undermine the credibility of Moss's testimony that Johnson hit her in the face—and not as substantive evidence or an alternative theory of what caused her injury.

¶ 19    The court then found Johnson guilty of all charges. In announcing its ruling on the domestic battery charge, the court summarized Moss's testimony, pointing out that Johnson—who did not live at Moss's apartment—came over uninvited. He then initiated a confrontation that resulted in Moss's lip injury, as depicted by the photographic evidence the State introduced. The court noted that Moss, on cross-examination, denied telling Officer Lopez she had been hit in the face with a pot. The court concluded, "[b]ut looking at the complainant's version of the events and what she told me and her believability, I don't think what the officer told me renders her testimony lacking in any way when it comes to proof beyond a reasonable doubt."

¶ 20    Defense counsel questioned if the court had considered Lopez's testimony as it related to the impeachment of Moss concerning both Johnson's intent and how her injury occurred. The court reiterated that it assessed the credibility of every witness and found Moss to be credible. The court further stated that "just because somebody tells me what something—how something's written in a report, doesn't mean that's absolutely what the complainant told this person."

¶ 21    Johnson was subsequently sentenced to concurrent terms of 180 days' imprisonment. The court additionally ordered that a plenary order of protection against Johnson remain in effect.

¶ 22                                    III. ANALYSIS

¶ 23    On appeal, Johnson's only contention is that the evidence presented was insufficient to sustain his conviction for domestic battery.

¶ 24    "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences from therein. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). In doing so, the trier of fact need not "disregard inferences which flow normally from the evidence before it, nor must the trier of fact search out all possible explanations consistent with innocence, and raise those explanations to a level of reasonable doubt." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60.

¶ 25    Upon a challenge to the sufficiency of the evidence adduced at trial, a reviewing court must inquire "whether, after viewing the evidence in the light most favorable to the prosecution, *any*

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original and internal quotation marks omitted.) *Cunningham*, 212 Ill. 2d at 278 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The reviewing court "will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Gray*, 2017 IL 120958, ¶ 35. "[A] reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Givens*, 237 Ill. 2d 311, 334 (2010). A conviction will not be reversed "unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Newton*, 2018 IL 122958, ¶ 24 (citing *People v. Wright*, 2017 IL 119561, ¶ 70).

¶ 26    In order to sustain Johnson's conviction for domestic battery, the State was required to prove beyond a reasonable doubt that he (1) knowingly or intentionally (2) without legal justification (3) by any means made "physical contact of an insulting or provoking nature" (4) with a family or household member. 720 ILCS 5/12-3.2(a)(2) (West 2016).

¶ 27    Johnson solely argues that the evidence presented was insufficient to establish that he made physical contact of an insulting or provoking nature with Moss. Specifically, he maintains that Moss's testimony was so unsatisfactory that his conviction "should be reversed outright because her statement to the police that was nearly contemporaneous to the incident showed her injury resulted from an accident and not criminal conduct."

¶ 28    After reviewing the evidence in the light most favorable to the State, we find that a rational trier of fact could conclude that Johnson made physical contact with Moss of an insulting or provoking nature. The record demonstrates that Johnson arrived uninvited to Moss's apartment and burst into her bedroom. He then confronted Moss about his relationship with another woman,

yelling at Moss to "mind [her] F'ing business." Moss testified that, as Johnson yelled and cursed, he pointed his index finger toward her eye and—with the knuckles of his other fingers—struck her in the face three times, causing a laceration to her lip. Moss was scared and shocked by Johnson's conduct. Any person of ordinary intelligence could find that being struck repeatedly in the face is tantamount to insulting or provoking physical contact. See *People v. Taher*, 329 Ill. App. 3d 1007, 1012 (2002) ("[A] person of ordinary intelligence can determine what constitutes 'insulting or provoking' physical contact.").[3] Moss's testimony, standing alone, was sufficient to prove Johnson guilty of domestic battery. See *Siguenza-Brito*, 235 Ill. 2d at 228 ("[T]he testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant.").

¶ 29    Although Moss's testimony alone was sufficient to convict, Adrienne's testimony in large part corroborated Moss's account. Adrienne not only testified that she saw Johnson's hand hit Moss in the face and Moss then placed her hand to her mouth, but explained that Johnson's "hand wagged like this. So he must have hit her with" the knuckles of his fingers below the index finger. See *People v. Aponte*, 45 Ill. App. 3d 1030, 1036 (1977) (citing *People v. Guido*, 25 Ill. 2d 204, 209 (1962)) ("The testimony of an already credible single witness becomes particularly adequate where it is corroborated by the testimony of another witness.").

¶ 30    In addition to this testimonial evidence, the State presented a photograph depicting the injury to Moss's lip, taken the day after the incident, which Moss testified was an accurate

---

[3]The State presented evidence of an injury to Moss's lip but was not required to prove that she sustained any physical injury as a result of the physical contact in order for Johnson to be found guilty of domestic battery under subsection 12-3.2(a)(2). See 720 ILCS 5/12-3.2(a)(2) (West 2016); *Taher*, 329 Ill. App. 3d at 1012 (affirming conviction under subsection 12-3.2(a)(2) based on testimony of complainant that defendant grabbed her, threw her on the floor, and forced his foot into her mouth, and noting that responding officer noticed no sign of physical injury).

depiction. The State also presented photographs of her broken cell phone and table, further corroborating Moss's testimony that Johnson destroyed her property in a fit of anger. The State additionally presented evidence of two prior domestic violence offenses by Johnson against Moss—one of which resulted in a conviction and both of which resulted in injuries to Moss's face. See 725 ILCS 5/115-7.4(a), 20(b) (West 2016) (where admissible, evidence of domestic violence offenses or convictions may be considered for its bearing on any relevant matter). This evidence, and the reasonable inferences drawn therefrom, were ample for a rational trier of fact to conclude that Johnson made physical contact with Moss of an insulting or provoking nature, and thus to sustain his conviction for domestic battery. Stated differently, the evidence presented was not so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of Johnson's guilt. *Newton*, 2018 IL 122958, ¶ 24.

¶ 31      Johnson nevertheless argues that Lopez's testimony that Moss told him she was hit by a pot sufficiently undermines Moss's testimony that Johnson hit her with his hand. He further contends that Adrienne's testimony is "no less questionable" than Moss's because Lopez did not recall Adrienne being present when he interviewed Moss. Johnson maintains Lopez "obviously would have memorialized Adrienne's account in his report if she had in fact been present at the scene and witnessed the incident."

¶ 32      Johnson essentially requests that we substitute our judgment for that of the trier of fact on credibility determinations. This court will not retry a defendant and overturn the trial court's credibility determinations on appeal merely because the defendant claims that the complainant was less credible than another witness. See *Siguenza-Brito*, 235 Ill. 2d at 228. In any event, "a complainant's testimony need not be unimpeached, uncontradicted, crystal clear, or perfect to be

clear and convincing" and thus sustain a finding of guilty beyond a reasonable doubt. *People v. Foley*, 206 Ill. App. 3d 709, 715 (1990).

¶ 33    Here, the record demonstrates that Johnson made similar arguments before the trial court. The court rejected Johnson's contentions, stating it had considered Lopez's testimony for purposes of impeachment on the elements of domestic battery but found the account given by Lopez did not necessarily reflect what Moss had told him. As the trial court correctly noted, although police reports may be used for impeachment purposes, they cannot be used as substantive evidence. *People v. Shief*, 312 Ill. App. 3d 673, 680 (2000).

¶ 34    Further, the trial court was not bound to accept Lopez's testimony over that of Moss. *People v. Defyn*, 222 Ill. App. 3d 504, 513 (1991) ("A police officer's testimony is to be evaluated in the same manner as that of any other witness, and there is no presumption that such testimony is more credible than that of any other witness."). Moreover, Lopez's testimony as to where he interviewed Moss and whether Adrienne was present was equivocal. The trier of fact need not "search out all possible explanations consistent with innocence, and raise those explanations to a level of reasonable doubt" (*In re Jonathon C.B.*, 2011 IL 107750, ¶ 60 (citation omitted)). Nothing in the evidence here convinces us that no rational trier of fact could believe Moss's version of events.

¶ 35    We are unpersuaded by the trio of cases Johnson cites in support of his argument for reversal. See *People v. Smith*, 3 Ill. App. 3d 64 (1971); *People v. Carter*, 19 Ill. App. 3d 21 (1974); *People v. Wise*, 205 Ill. App. 3d 1097 (1990). In each of those cases, one or more witnesses for the State gave testimony contrary to or inconsistent with their own prior testimony or signed statements. Moss, unlike the self-impeaching witnesses in *Smith*, *Carter*, and *Wise*, did not

contradict herself with any prior testimony or written statements. Rather, she consistently testified that Johnson had hit her, that she told Lopez that Johnson had hit her, and that she did not tell Lopez that she was hit by a pot. Adrienne's testimony corroborated Moss's account, and she further explained how Johnson hit Moss. The trial court found Moss credible, and we defer to that determination. *Gray*, 2017 IL 120958, ¶ 35.

¶ 36                                    IV. CONCLUSION

¶ 37    For the foregoing reasons, we affirm the judgment of the Circuit Court of Cook County.

¶ 38    Affirmed.