THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAWRENCE HAYES, Defendant-Appellant.

First District (6th Division)   No. 1—86—3455

Opinion filed May 19, 1989.

Randolph N. Stone, Public Defender, of Chicago (Julie A. Hull, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Paula Carstensen, and Robyn B. Berman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a jury trial, defendant Lawrence Hayes was found

guilty of criminal sexual assault, aggravated criminal sexual assault and kidnapping. The trial court sentenced defendant to an extended term of 55 years' imprisonment for aggravated criminal sexual assault and a concurrent term of 14 years' imprisonment for kidnapping. On appeal, defendant contends that in closing argument the prosecutor improperly recited at length her personal experience of a near-rape; that the trial court erred in preventing any questioning of the victim in regard to a murder charge pending against her; that the prosecutor improperly elicited testimony of, and commented on, defendant's post-arrest silence; and that he was denied effective assistance of counsel because of a conflict of interest.

The victim testified that on November 11, 1985, at about 5 a.m., she walked from her home to a gas station to buy cigarettes. She saw defendant following her. She ran, but he caught her, held a large hunting knife to her side and threatened to kill her if she screamed. After he forced the victim into a Cadillac, he looked through her purse, but found only a few dollars and took nothing. After driving for 15 minutes, defendant parked and forced the victim to perform fellatio, and then raped her vaginally. He drove around until he stopped in an alley, where he again forced the victim to perform fellatio and raped her vaginally. He also attempted anal intercourse.

When the victim asked to leave the car to urinate, she escaped. She had been with defendant between one and two hours. She tried to stop a car driven by a woman, and screamed she had been raped, but the woman did not stop. The victim hid under a porch for several minutes until defendant left and she saw Miss C. Seay leave her home. The victim yelled for help and told Seay a man had tried to rape and rob her. The victim hesitated to say she had been raped for fear that Seay, like the first woman, would not help. Seay and the victim ran to the corner, where they saw a squad car. The victim spoke with a police officer. She described defendant as a black male with a light complexion, a mustache, 25 to 27 years old, 5 feet 4 inches to 5 feet 7 inches tall, and weighing 160 to 170 pounds. He wore a black leather jacket, tan pants and white T-shirt. (Defendant, a medium-complected black male, later reported he was 24 years old, 5 feet 8 inches tall and weighed 144 pounds.) The officer and the victim drove around the area but did not see defendant. She was shown mug shots, but did not see defendant's photograph. An officer took her to the hospital.

On November 30, 1985, the victim was riding in a car driven by a friend of her brother's when she saw defendant on a corner selling dolls and stuffed animals. He was wearing the same black leather

jacket. She notified the police, who arrested defendant.

Miss Seay testified for the State that on November 11, 1985, at 7:30 a.m., she was walking when the victim ran up and said that a man was after her and had threatened to rape her. They ran towards a bus stop and spotted a marked police car. The victim went to speak with the officers, and Seay left on the bus.

Officer Patrick Markham testified for the State that he was working a shift ending at 7:30 a.m. when, at about that time, the victim came up to his parked squad car and said she had been forced into a car at knife point and raped. The victim described her assailant and his automobile. After touring the area with the victim and not spotting defendant, Markham took the victim to the police station and turned the case over to Officer Don King, who was coming on duty. Markham did not show mug shots to the victim.

Officer King testified for the State that he received an assignment from Markham to continue the rape investigation. He and his partner filled out the entire police report, which included the victim's recital of the offense. The officers brought her to the hospital for treatment. They did not show her mug shots.

Officer Michael Cox testified that he arrested defendant on November 30. Cox and his partner exited the police car, identified themselves to defendant and informed him of the charges. The officers then "placed him under arrest and we read of his rights." Defendant did not resist arrest. When asked if defendant said anything when told of the charges, the officer replied, "No. He didn't seem surprised."

Gloria Jean Thurman, defendant's mother, testified for the defendant that on November 11, 1985, defendant was at home. At 3 a.m., she asked defendant to tell his sister and her husband to stop arguing. Thurman's husband became ill, and at 6 a.m., defendant drove him to the hospital. Neither defendant nor his family owned or drove a Cadillac. Thurman did not report defendant's whereabouts that night to the police when her son was arrested.

At the sentencing hearing, it was brought out that defendant had three previous rape convictions.

Defendant initially contends that the prosecutor committed prejudicial error in closing argument by relating to the jury her personal experience which might have ended in assault or rape. The prosecutor stated:

> "And the testimony you heard from [the victim] from this witness stand was clear, was believable and was uncontradicted in any way, shape, or form.

* * *

\*\*\* It's a shame this woman went out to get cigarettes by herself at 5:30 in the morning, but women in this city and in this country should be allowed to walk the street at any hour without being accosted by the likes of Lawrence Hayes.

They should be able to walk the streets. Two blocks, [the victim] was going two blocks to get some cigarettes. Now, I don't smoke any more but when I was in law school I smoked cigarettes and there was one evening when it was finals time and I ran out of cigarettes about 10:30 at night. I thought maybe I'll study some more and do without it. And it got to be 11:30 at night, I couldn't do without my cigarettes. I was addicted.

There was a drugstore a few blocks away and I decided to walk. I didn't go to school, I didn't go to law school, in this city. I went to law school in another city where it wasn't—I lived in not the best neighborhood in town at that time. I decided to walk rather than move my car because near the drugstore there was no parking. It was around 11:30, the drugstore closed at 12:00.

I went around the corner and the car was behind me and I saw someone, he was walking towards me. I didn't like how he walked—

DEFENSE COUNSEL: Your Honor, I'm going to object.

COURT: Proceed.

PROSECUTOR:—so I crossed the street diagonally. He crossed the street diagonally. I didn't want to start to run because I thought he would run after me. While I was deciding what to do some people came out of their house and he ran past me, so he was going to do something. I was lucky, [the victim] wasn't."

■■ Generally, it is improper for the prosecutor to vouch for the credibility of a witness or to express personal opinions about the case. (*People v. Emerson* (1987), 122 Ill. 2d 411, 522 N.E.2d 1109; *People v. Rogers* (1988), 172 Ill. App. 3d 471, 526 N.E.2d 655.) The prosecutor may comment on the credibility of witnesses only so long as those comments are fair inferences from the evidence. (*People v. Evans* (1988), 173 Ill. App. 3d 186, 527 N.E.2d 448; *People v. Carter* (1988), 168 Ill. App. 3d 237, 522 N.E.2d 653.) The prosecutor here improperly bolstered the victim's credibility and improperly appealed to the jury's passions and prejudices. She went far beyond any comment on the evidence and improperly placed the integrity of the State's Attorney's office behind the credibility of this witness.

■ A defendant is entitled to a trial by an unbiased jury and is not to be judged based on the unsubstantiated personal opinion of the prosecutor. (See *People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349.) The purpose of this rule prohibiting the expression of personal opinions, particularly based on facts not in the case, is to prevent the introduction of new material by a witness whom defendant cannot cross-examine, to prevent the jury from assuming counsel has relevant information not presented at trial, to discourage appeals to the jurors' emotions, and to prevent distracting the jury from weighing proper factors. *People v. Holman* (1984), 103 Ill. 2d 133, 469 N.E.2d 119.

In the present case, the State urges that because the victim was abducted from the street and the prosecutor was almost abducted from the street, the prosecutor was "merely expanding on that inference" in her argument. We cannot agree. The prosecutor's remarks suggested that her previous experience was somehow relevant to the jury's decision and thus injected improper and irrelevant consideration into the jury's deliberations. (See *People v. Yates* (1983), 98 Ill. 2d 502, 456 N.E.2d 1369.) It was not a case, *e.g.*, where the prosecutor's references were general and vague and thus not requiring reversal. (See *People v. Spreitzer* (1988), 123 Ill. 2d 1, 525 N.E.2d 30.) The argument here was a detailed, specific account of the prosecutor's personal experience, which could naturally appeal to the sympathy or prejudice of the jury. She strongly implied that the victim's testimony should be believed because the prosecutor too had faced a dangerous neighborhood on a late night, a short trek for cigarettes, and the fear of being attacked by a man chasing her.

■ The State maintains that the prosecutor merely commented upon evil resulting from crime and urged the fearless administration of the criminal law. While such comment would be proper, it is improper where the prosecutor invokes the prestige of the prosecutorial office or interjects her own personal opinion. See *People v. Fletcher* (1987), 156 Ill. App. 3d 405, 509 N.E.2d 625.

■ Improper comments in argument of counsel do not constitute reversible error, however, unless they result in substantial prejudice to defendant and were a material factor leading to defendant's conviction, *i.e.*, where the result might have been otherwise had the remarks not been made. *People v. DeHoyos* (1988), 172 Ill. App. 3d 1087, 527 N.E.2d 319.

■ The evidence supporting the conviction here was not overwhelming. The conviction rests largely upon the credibility of the victim's testimony. While a jury could find her testimony alone sufficient

to find defendant guilty beyond a reasonable doubt, defendant has the right to not have that credibility significantly bolstered by improper prosecutorial argument. There was no physical or medical evidence presented. Seay testified only that the victim said a man was after her and threatened to rape her. Markham testified that the victim reported the rape. Thus, while Seay and Markham offered some corroboration, the State's case relied greatly upon the victim's identification testimony. For these reasons, we find the result might have been otherwise had the prosecutorial remarks not been made and that they prejudiced defendant and were a material factor leading to the conviction. The comments constituted prejudicial error.

Defendant also contends that the trial court erred in granting the State's motion *in limine* precluding any questioning of the victim about a pending murder charge for which she was in custody.

Prior to trial, the State moved orally "to preclude cross-examination of the victim or any other reference in the trial to her merely pending murder charge." The State then apparently tendered to defense counsel an audio cassette tape containing the victim's recorded statement about the pending murder charge. It appears, therefore, that the trial court was not given the benefit of the transcript of that tape which is in the record before us. The typewritten statement of the victim states that she had been seeing Fred Herndon, who sometimes paid her for sexual relations. On September 14, 1986, Herndon asked her not to see other men and promised he would stop seeing another woman. After he spoke with another woman on the telephone, however, Herndon and the victim argued verbally and physically. She then stabbed and killed Herndon and afterwards robbed his home.

The argument concerning the oral motion *in limine* before the trial court centered only on the possibility of the victim's receipt of offers or consideration from the State in exchange for her testimony in this case. The trial court cannot be faulted for not delving into the defense's argument raised before this court that the victim was a prostitute who killed her pimp and had previously falsely accused defendant of rape. Defense counsel offered the trial court no information suggesting such facts when the court entered its order *in limine*.

■■ ■ We note, however, that generally a witness may be questioned about any possible influence by interest, bias or motive to testify falsely, even regarding an unrelated crime. (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526.) Such cross-examination before the jury is a matter of right, and the trial court has no discretionary power to deny defendant that right. (*People v. Triplett* (1985), 108 Ill.

2d 463, 485 N.E.2d 9.) Thus, we find that at retrial, defendant should be permitted to examine the victim of a pending murder charge, if the charge remains pending, and of any expectation of lenity she may have as a result of her testimony.

Defendant also maintains that he was denied a fair trial because of testimony and prosecutorial references to his post-arrest silence. Since we assume that on retrial nc such alleged error will occur, we will not discuss the issue.

■ In regard to the final issue, defendant contends that he failed to receive effective assistance of counsel. He maintains there was a conflict of interest because he was represented by the office of the public defender and the victim was represented by the same office in her murder case. We find no such conflict between the assistant public defender from the autonomous murder task force who represented the victim in the unrelated murder case, and the assistant public defender representing defendant in this case. See *People v. Coates* (1985), 109 Ill. 2d 431, 488 N.E.2d 247; *People v. Miller* (1980), 79 Ill. 2d 454, 404 N.E.2d 199.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

EGAN, P.J., and LaPORTA, J., concur.