# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3064

_____

Mindy Gilster

*Plaintiff - Appellee*

v.

Primebank; Joseph Strub

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: December 18, 2013
Filed: April 4, 2014

_____

Before RILEY, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Primebank and Joseph Strub ("Defendants") appeal a $900,000 jury verdict in favor of Plaintiff Mindy Gilster on her claims of unlawful sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Iowa Civil Rights Act, Iowa Code § 216.6. Defendants argue they are entitled to a new trial because the district court erred in overruling their objection to

improper rebuttal closing argument by Gilster's counsel, and then abused its discretion in denying Defendants' post-trial motion because this argument, while improper, was not sufficiently prejudicial to warrant a new trial. Concluding this is one of those relatively rare cases where Defendants have made a sufficient showing of prejudice caused by "plainly unwarranted and clearly injurious" closing argument, we reverse and remand for a new trial. See Morrissey v. Welsh Co., 821 F.2d 1294, 1303 (8th Cir. 1987) (standard of review).

## I.

We briefly summarize evidence from the six-day jury trial that bears on the prejudicial closing argument issue presented on appeal. Joseph Strub as Market President of Primebank's branch in Sioux City, Iowa, hired Gilster as Credit Administrator in December 2007. Gilster filed an internal sexual harassment complaint in July 2009, alleging continuing sexual harassment by Strub. Gilster testified that the harassment started "around the summer of 2008." She finally overcame her reluctance to make a formal complaint when Gilster inquired about a possible bonus and Strub replied, in front of the entire small staff, that Gilster should "take out your teeth,[1] come into my office, and shut the door." According to Gilster, Strub also made comments about her legs when she wore skirts; placed his arm around her shoulders and said that they "should hook up"; approached her from behind while she was fixing breakfast in the employee break room, placed his hands on the counter alongside hers, and pressed his pelvis against her backside; and massaged her shoulders "intimately" when she was seated at her desk.[2]

---

[1]Gilster wears dentures due to a genetic condition.

[2]Gilster claimed that female co-workers witnessed some of these incidents. No one corroborated this testimony at trial, other than those who heard Strub's improper "teeth" remark. Several female co-workers denied observing or experiencing sexual harassment by Strub or a sexually hostile environment at Primebank.

Primebank investigated Gilster's complaint. Strub admitted making the "take out your teeth" comment; he denied her other allegations of continuing sexual harassment. Primebank "found that there was substance" to Gilster's complaint and disciplined Strub by issuing a formal reprimand, requiring him to attend sexual harassment training at a local community college, instructing him to stop harassing Gilster, and warning him not to retaliate.

Though Gilster reported no further instances of overt sexual harassment by Strub directed to her, she began complaining of retaliation by Strub in late July 2009, complaints that continued and intensified until Primebank fired her in February 2011. According to Gilster, Strub began avoiding her after she complained and changed his voicemail message to direct callers to contact a less experienced employee rather than Gilster. Primebank investigated the retaliation complaints. Strub explained that he was "quiet" for a few days after Gilster's initial complaint, but the office was quickly back to normal. He changed his voicemail message when he went on vacation because Gilster was just returning, and the other employee had been dealing with new clients while Gilster was away. The Primebank officers to whom Gilster complained considered this a legitimate business reason that was "not retaliatory." Gilster testified that Strub never put her back on his voicemail message.

Gilster subsequently complained that Strub denied her a promised promotion to a salaried position in December 2009. Primebank officers investigated the complaint and concluded that the position Gilster wanted did not exist and her current position could not be an exempt salaried position. When Primebank took no action on this complaint, Gilster hired counsel and filed a complaint of sexual harassment and retaliation with the Iowa Civil Rights Commission. Primebank responded by interviewing Gilster's co-workers, making them aware that Gilster had complained of harassment by Strub. Several employees complained to Primebank about Gilster beginning in late 2009, complaints that her former co-workers characterized at trial as reflecting a downturn in Gilster's work performance rather than retaliation. Gilster

testified that the co-worker interviews made her work environment more "difficult" and "hostile." Co-workers testified that a change in Gilster's attitude led to a tense environment in the office.

Gilster filed this lawsuit in September 2010. Primebank's human resources officer was directed to encourage Gilster's co-workers to report any performance problems. In December 2010, Gilster received a worse performance review than in periods before she complained of Strub's harassment. Gilster "felt that there was a big target on [her] back." On February 3, 2011, staff discovered that Gilster's emails from her office computer were being monitored. Gilster reacted in a way Primebank management considered disruptive. On February 7, she filed a second discrimination complaint with the Iowa Human Rights Commission. Three days later, Primebank fired Gilster. She filed a Second Amended Complaint. The case proceeded to trial.

At trial, the parties disputed the extent and nature of Strub's initial harassment, whether Strub or any other Primebank employee retaliated against Gilster, and whether Primebank's reasons for termination were pretextual. Witness credibility was crucial, as the parties introduced sharply conflicting testimony regarding who was to blame for what obviously became an exceedingly unpleasant workplace in the months leading up to Gilster's termination. Primebank witnesses offered two non-retaliatory reasons for Gilster's termination; vigorous cross-examination by her attorneys made it plausible for the jury to infer that these reasons were pretextual.

There was also conflicting evidence regarding the extent and the cause of Gilster's emotional distress. Gilster, her husband, and a nurse practitioner, Elizabeth Pratt, provided detailed evidence of emotional distress. But Gilster initially told Nurse Pratt in August 2008 that her anxiety and depression began in December 2007, before she alleged that Strub began sexually harassing her. Gilster saw Nurse Pratt again in November 2008, but she did not complain of workplace harassment until July 2009, just after filing her internal complaint. Gilster testified that she suffered

enhanced injury from Strub's harassment because she had been sexually abused as a child, but she never discussed this history with Nurse Pratt. Gilster, her husband, and Nurse Pratt provided testimony supporting a claim of future emotional distress that Gilster allegedly suffered after she was fired, including depression, anxiety, excessive alcohol consumption, and self-mutilation. But Gilster only saw a counselor once, and Nurse Pratt had not seen Gilster since August 2010.

The jury found both Primebank and Strub liable for unlawful sexual harassment and retaliation. The verdict awarded Gilster over $900,000. The district court reduced the verdict to eliminate obvious duplications and excesses and denied Defendants' post-trial motion for new trial. This appeal followed.

## II.

The issue on appeal is whether counsel for Gilster during rebuttal closing argument made improper remarks that were so "plainly unwarranted and clearly injurious" that they warrant a new trial. Morrissey, 821 F.2d at 1303. We review the district court's denial of a new trial for abuse of discretion. Billingsley v. City of Omaha, 277 F.3d 990, 997 (8th Cir. 2002).

In our view, counsel's rebuttal argument included numerous comments that clearly violated the following provisions in Rule 32:3.4 of the Iowa Rules of Professional Conduct, titled Fairness to Opposing Party and Counsel:

> A lawyer shall not . . . in trial, allude to any matter . . . that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, [or] the culpability of a civil litigant . . . .

-5-

Thus, the critical question is whether the comments were sufficiently prejudicial to require the new trial the district court denied. In considering this issue, our focus is on counsel's final remarks, which appear on pages 1470-71 of the trial transcript:

> Mindy told you when she made her complaint back in 2009 she feared . . . retaliation and that making her complaints and what effect it would have on her career.
>
> Mindy Gilster had the strength to make that complaint back on July 2, 2009. I sure didn't. Back in 2006 I was sexually harassed by a professor at Drake, but I was on my way out. I was a third-year law student, and I had been a student bar association president for the last year, and I was well respected and liked by my peers. I had a great relationship with the dean of the law school because of my role as president. But I refused to be that --
>
> [DEFENSE COUNSEL]: Excuse me, counsel. Your Honor, I do not think this is appropriate for argument.
>
> THE COURT: Overruled.
>
> MS. TIMMER: And I refused to stand up for myself. It takes great strength and fearlessness to make a complaint against your supervisor.
>
> Given my calling as a civil rights lawyer, I am constantly amazed by the strength and courage that my clients have when facing their employers and supervisors, the people who hold all the power. It is my sincere hope that one day my daughter, my friends, my sisters will live in a community where they will not be silenced by fear. And you can ensure this happens with your verdict.
>
> I am fortunate that in the course of my life and in my work I've had the opportunity to represent these women who are so strong to make these complaints. I'm fortunate in my life that for the last two years I've

had the honor of representing Miss Mindy Gilster and that I got to try this case.

But the power and responsibility that I've held on Mindy's case for the last two years is now over, and I am particularly fortunate that I can give the power and responsibility for correcting injustices like those we have seen in this courtroom to somebody else. I give it to you.

In denying Defendants' post-trial motion, the district court concluded that it should have sustained the above objection because it was improper for counsel to "testify as an expert witness" about her other clients' courage, citing United States v. Segal, 649 F.2d 599, 604 (8th Cir. 1981). However, the court concluded, Defendants did not "make a concrete showing of prejudice" from this improper argument because counsel's "analogy to her own life" did not "vouch[] for the credibility of Gilster's claims" but merely "emphasized evidence already in the record"; "Gilster's success did not hinge only on her credibility"; the size of the verdict was not evidence that "counsel's remarks prejudiced the jury"; and, "[p]erhaps most important of all," the court's instructions at the start and end of the trial told the jury that "statements, arguments, questions, and comments by the lawyers are not evidence." We disagree.

In determining whether Defendants made the requisite showing of prejudice, the entire trial must be our context. See Silbergleit v. First Interstate Bank of Fargo, N.A., 37 F.3d 394, 398 (8th Cir. 1994). In Whittenburg v. Werner Enterprises, Inc., 561 F.3d 1122, 1131-32 (10th Cir. 2009), the Tenth Circuit identified "three separate factors, long used to mark the boundaries between when a new trial is and is not required." We conclude that each of those factors is present here.

First, the remarks in question "were not 'minor aberrations' made in passing." Id. at 1131. Counsel made a deliberate strategic choice to make emotionally-charged comments at the end of rebuttal closing argument, when they would have the greatest emotional impact on the jury, and when opposing counsel would have no opportunity

to respond. Referring to an experience in her own life was "plainly calculated to arouse [the jury's] sympathy." <u>Id.</u> at 1129. Counsel then ended the argument by "giving" to the jury "the power and responsibility for correcting injustices." This was no different than a prosecutor urging the jury at the end of a criminal case "to be the conscience of the community," an improper argument that, in a close case, may warrant a new trial. <u>United States v. Johnson</u>, 968 F.2d 768, 771-72 (8th Cir. 1992). Moreover, counsel's recounting of her personal experience -- facts that were not in evidence -- was aimed at enhancing her client's credibility by telling the jury that counsel, too, had endured similar misconduct. "[T]he cardinal rule of closing argument [is] that counsel must confine comments to evidence in the record and to reasonable inferences from that evidence." <u>Whittenburg</u>, 561 F.3d at 1128-29; <u>see</u> <u>People v. Hayes</u>, 539 N.E.2d 355, 358-60 (Ill. App. 1989) (reversing sexual assault conviction and remanding for a new trial because prosecutor vouched for the victim's credibility by describing a personal experience).

Indeed, improper vouching permeated counsel's rebuttal argument. Earlier, counsel had argued:

> And I assure you Mindy Gilster did not make up the fact that her uncle sexually abused her at age 12. It was not a fact she brought in here to arouse sympathy or ask for more money. It's just the facts, folks.

> \* \* \* \* \*

> All I can tell you is from my conversations with Mindy is that she doesn't recall saying [anxiety and depression] started [when Nurse Pratt's records reflected].

-8-

On appeal, Gilster concedes that it was improper vouching when counsel assured the jury that her client testified truthfully about past sexual abuse[3] and about when her depression and anxiety began. Yet the district court brushed this vouching aside, reiterating that "Gilster's case did not turn solely on her own credibility." Counsel also repeatedly referred to the experiences of other clients, again arguing evidence not in the trial record, which the district court acknowledged was improper:

> There are plenty of my former clients who I was able to ensure were back in the workplace and everything has been fine and they still work there.

> \*     \*     \*     \*     \*

> Some of us deal with things in different ways. There's no doubt. I have clients who go to church more, who talk to their pastor or their priest, who go out with their friends or family members, who confide in -- who do actually go see counselors. I have clients who turn to alcohol, a glass of wine before bed.

The second factor identified by the court in <u>Whittenburg</u> is that "the district court declined to take any specific curative action." 561 F.3d at 1131. Here, as in <u>Whittenburg</u>, the district court overruled defense counsel's timely objection to the improper argument, which told the jury they could appropriately consider the argument in the deliberations they were about to begin. True, the district court's general instructions included a reminder that counsel's arguments are not evidence, but this did not dissuade the court in <u>Whittenburg</u> from remanding for a new trial:

> The district court's decision to overrule the objection to counsel's argument and deem it appropriate was never undone and remained the

---

[3]We reject Gilster's assertion on appeal that this improper vouching was invited or provoked by Defendants' closing argument.

most specific and timely guidance from the court to the jury with respect to the propriety of counsel's closing remarks.

Id. at 1132. We agree. Indeed, in Morrissey, we concluded that the district court committed *"reversible error"* when it failed to sustain defendant's objection to an argument that was "an emotional appeal to the jury to punish the company." 821 F.2d at 1304; see N.Y. Central R.R. v. Johnson, 279 U.S. 310, 318 (1929) ("The failure of the trial judge to sustain petitioner's objection or otherwise to make certain that the jury would disregard the appeal, could only have left them with the impression that they might properly be influenced by it in rendering their verdict, and thus its prejudicial effect was enhanced.").

The third factor identified by the court in Whittenburg is also present in this case -- "the size of the damage award, while not beyond the bounds of rationality, suggest[s] that counsel's comment had a prejudicial effect." 561 F.3d at 1132. As we have explained, both the cause and the extent of Gilster's emotional damages were vigorously contested. Gilster's testimony was the only evidence that she suffered sexual abuse as a child that increased her emotional injury from Strub's harassment. Gilster and Nurse Pratt differed as to why Gilster sought treatment for depression and anxiety in the summer of 2008. And no evidence other than Nurse Pratt's equivocal opinion supported Gilster's testimony that she would suffer emotionally for the rest of her life as a result of Defendants' actions. Counsel's vouching and sympathy-arousing personal experience were directly aimed at enhancing these damages. Given the jury's decision to award Gilster $40,000 for past emotional distress, $200,000 for future emotional distress, and $600,000 punitive damages, we cannot say that this improper argument "did not accomplish the purpose which it was clearly intended to accomplish, namely, the enhancement of damages." Id. at 1132-33, quoting Chicago & N.W. Ry. v. Kelly, 84 F.2d 569, 576 (8th Cir. 1936); accord Morrissey, 821 F.2d at 1303 ("We cannot say on the record before us that there is no correlation between

-10-

the large sum awarded . . . and the obviously prejudicial argument made by plaintiff['s] counsel.").

In Stollings v. Ryobi Technologies, Inc., the Seventh Circuit noted that "the weight of the evidence" is another relevant factor in determining "whether the improper argument deprived a party of a fair trial." 725 F.3d 753, 760 (7th Cir. 2013). Though not determinative, we agree this is a relevant factor. Again, it points toward the need for a new trial in this case. After the jury returned its verdict, the district court commented, "it was kind of a tough case. It could go either way." And unlike the district court, we conclude that Gilster's credibility, which counsel's improper argument was intended to enhance, was a key issue as to liability, as well as damages. Only Gilster described Strub's alleged harassment other than the "take out your teeth" comment, because her former female co-workers testified they did not observe such conduct or experience it themselves. Gilster's testimony describing retaliatory actions by Strub and other Primebank officers, and her opinion that the reasons given for her termination were false, were contradicted by her co-workers, as well as by her supervisors and by the Primebank decisionmakers. The hard-fought trial warranted hard-hitting, but not improper, closing argument.

Having carefully reviewed the entire trial record, we are left with the firm conviction that the timing and emotional nature of counsel's improper and repeated personal vouching for her client, using direct references to facts not in evidence, combined with the critical importance of Gilster's credibility to issues of both liability and damages, made the improper comments unfairly prejudicial and require that we remand for a new trial. This is not an action we take lightly, for it means that Gilster is deprived of a favorable jury verdict, and that all the witnesses may need to endure again what was surely a stressful, unpleasant trial. However, as we said many years ago in an opinion that has been frequently cited by other courts, "when a lawyer departs from the path of legitimate argument, [s]he does so at [her] own peril and that of [her] client." Kelly, 84 F.2d at 573.

-11-

The judgment of the district court including the award of attorneys' fees is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

_____