# IN THE COURT OF APPEALS OF IOWA

No. 17-0137
Filed June 20, 2018

**KELSEY BRONNER,**
      Plaintiff-Appellant,

**vs.**

**REICKS FARMS, INC.,**
      Defendant-Appellee.
_____

Appeal from the Iowa District Court for Howard County, Margaret L. Lingreen, Judge.

Kelsey Bronner appeals from the district court's order granting a new trial.
**AFFIRMED.**

Matt J. Reilly, Nicholas C. Rowley, and Dominic F. Pechota, of Trial Lawyers for Justice, P.C., Cedar Rapids, for appellant.

Brian L. Yung of Klass Law Firm, L.L.P., Sioux City, for appellee.

Heard by Danilson, C.J., and Mullins and Bower, JJ.

**DANILSON, Chief Judge.**

Kelsey Bronner appeals from the district court's order granting a new trial on her claims based on injuries sustained during a car accident for which Reicks Farms, Inc. (Reicks Farms) has stipulated liability. Bronner contends the district court improperly found Bronner's counsel engaged in misconduct warranting a new trial under Iowa Rule of Civil Procedure 1.1004(2). Reicks Farms asserts this court does not have jurisdiction to consider the appeal because the notice of appeal was not timely filed. Reicks Farms also maintains the district court did not abuse its discretion in granting a new trial. Finding no abuse of discretion in the district court's order granting a new trial, we affirm.

**I. Background Facts & Proceedings.**

On April 30, 2008, Bronner—then sixteen years old—was injured when her vehicle collided with a vehicle being driven by an employee of Reicks Farms. Bronner suffered fractures to bones in her face and nose, damage to nerves in her forehead controlling her eyelid and eyebrow functions, abrasions and cuts on the left side of her face requiring stiches, swelling the size of a baseball on her right cheek, and the loss of the lobe portion of her right ear. Bronner underwent surgery to reconstruct her ear and to attempt to reconnect the nerves in her forehead. Bronner had a number of additional surgical procedures related to her injuries between the time of the accident and the time of trial commencing on August 10, 2016.

At trial, Bronner explained that in addition to the physical pain resulting from the accident itself and the subsequent procedures required to treat her injuries, the permanent damage to her face and ear has had a significant ongoing physical and

mental impact on her life. Bronner stated the scarring on her face and ear tingle when touched, she is unable to move her right eyebrow, her eyelid twitches or blinks when she is fatigued, and she experiences severe swelling of the right side of her face about once per month. Bronner also stated her face has begun to droop, and will droop more and more over time. Bronner explained her changed appearance has caused her embarrassment, emotional distress, and to be less outgoing throughout her life.

At trial, Reicks Farms stipulated to full liability for the damages resulting from the car accident. Thus, the only issue remaining was the amount of damages to be awarded. The parties agreed Bronner had incurred medical expenses in the amount of $59,189.67. Bronner sought damages for past medical expenses, past pain and suffering and disfigurement, future pain and suffering and disfigurement, past loss of full mind and body, and future loss of full mind and body.

During closing argument, plaintiff's counsel stated he had gotten to know Bronner and her family, and said, "Bronner and her parents are truth tellers, salt of the earth, good people, truth tellers" who had gathered the courage to seek compensation for the injuries Bronner sustained. He also stated what happened to Bronner had been ignored and not taken seriously. Plaintiff's counsel speculated the nerve damage to Bronner's face was causing her face to droop over time, and argued there was no real fix for Bronner's injuries. He told the jury its verdict will reflect what preventing this type of injury is worth to their community and asked the jury to stand up for Bronner and award her appropriate damages.[1]

---

[1] No objections were made during plaintiff's counsel's closing statement.

In his closing argument, defense counsel asked the jury to evaluate how the accident and Bronner's injuries have truly affected her life. Counsel asked the jury to consider the medical evidence regarding what Bronner reported to doctors and the medical issues Bronner is expected to experience in the future. He noted Bronner reported to doctors she was pleased with the result of her procedures, Bronner did not report she was depressed, and the medical records do not state Bronner would experience drooping of her face over time. He also noted photos taken from Bronner's Facebook account reveal she has reached all the normal milestones in life and has been successful. He stated, "So, you know, has this really changed her value as a person? The answer to that is no. And, you know, has this altered her course in life? No."

Then, in his rebuttal closing argument, plaintiff's counsel made a number of statements the district court ultimately found to be improper, including vouching for the veracity of Bronner and her witnesses, informing the jury they had been misled by defense counsel, and asking the jury to stand up for Bronner. In its ruling on the motion for new trial, the district court focused on the following rebuttal statements made by plaintiff's counsel:

**(1)** "[I]t never fails to surprise me when I see a defense lawyer get up in front of a jury and just say a number of things that are untrue. . . . And I'm disappointed at what I just heard come out of the mouth of [defense counsel]." Defense counsel objected to these statements, and the objections were sustained. However, plaintiff's counsel then immediately stated, "What should be disappointing to you is how you've been misled." Defense counsel again objected, and the objection was sustained.

**(2)** Plaintiff's counsel later stated:

[T]o say that [the] photos [from Bronner's Facebook account] show that this didn't alter her or change her is just untrue and it's unfair and it's an unfair thing to say. It's just not true. It seems like—like [defense counsel]'s coming—he's come all the way over here from Sioux City, Iowa, to call the Bronner family liars.

No objection was made to this statement.

**(3)** The district court also considered plaintiff's counsel's statement,

Everything we have said here is true, is absolutely [one hundred] percent true. There is no getting around it other than just hoping that maybe—maybe in this county, maybe we can get off cheap. Those numbers are an insult. They really, really are. They are an insult. They are shameful numbers to award a young girl for a life of disfigurement in a case like this. Shameful. Not something to be proud of.
            They say, oh we want—we want Kelsey Bronner—we want her compensated. The truth is, brutal honesty, if they could give her zero and get away with it they would.

Defense counsel objected to these statements and the objection was sustained.

**(4)** And immediately following the objection to the statement above, plaintiff's counsel immediately stated, "If they could . . . give her a goose egg, do you think they would?" Another objection was made and sustained. Then plaintiff's counsel asked the jury to "[p]lease go back there and stand up for her. Somebody has gotta."

The jury delivered its verdict on August 12, 2016, awarding Bronner $59,189.67 for past medical expenses, $90,909.23 for past physical and mental pain and suffering and disfigurement, $90,909.23 for past loss of full mind and body, $659,090.80 for future physical and mental pain and suffering and disfigurement, and $659,090.80 for future loss of full mind and body. The parties stipulated to entry of final judgment in the amount of $1,559,189.00.

On August 23, 2016, Reicks Farms filed a motion for new trial asserting a new trial was appropriate because:

> During the course of trial, [Bronner]'s attorney made numerous improper statements and arguments to the jury which included personal opinions of counsel, personal vouching of their client, [and] improper references to [Reicks Farms] and to defense counsel. The statements and arguments constituted an improper effort to appeal to the passion and prejudice of the jury.

Following the hearing on the motion for new trial, the district court entered its ruling on November 23, 2016. The court held:

> The court finds plaintiff's counsel made improper statements in his rebuttal to [Reicks Farms]'s closing argument. Those improper remarks included, but were not limited to, vouching for the veracity of [Bronner] and her witnesses. Furthermore, by stating, "Everything we have said here is true . . . ," counsel asserted personal knowledge of facts in issue.
> [Bronner] sought an award of future damages for pain and suffering, as well as disfigurement. In [Bronner]'s closing argument, counsel argued [Bronner]'s face would droop more and more over time as [Bronner] aged, and facial swelling would continue into the future. When defense counsel argued there was no medical evidence in the record that [Bronner]'s face would droop and swelling would exist in the future, [Bronner]'s counsel replied that everything [Bronner] presented in trial was absolutely [one hundred percent] true, that the jury had been misled by defense counsel, and the jury needed to stand up for [Bronner]. The jury subsequently returned verdicts that included an award of $659,090.80 for future pain, suffering, and disfigurement. The jury returned an identical figure for future loss of full mind and body. The court finds plaintiff [counsel]'s vouching for the truthfulness of [Bronner] and [Bronner]'s witnesses, informing the jury they had been misled by defense counsel, and charging the jury to stand up for [Bronner] were calculated to, and with reasonable probability did, influence the jury's verdict. The court finds the rebuttal argument of plaintiff's counsel prejudiced [Reicks Farms] and it is probable a different result would have been reached, but for that misconduct.
> The court concludes [Reicks Farms] is entitled to a new trial, as misconduct of the prevailing party's counsel materially affected [Reicks Farms]'s rights at trial, as contemplated by [Iowa Rule of Civil Procedure] 1.1004(2).

On December 6. 2016, Bronner filed a rule 1.904(2) motion to enlarge and amend the district court's order granting the motion for new trial. The court denied the rule 1.904(2) motion, finding:

> In ruling on [Bronner]'s motion to strike [Reicks Farms]'s brief in support of [the] motion for new trial and [Reicks Farms]'s motion for new trial, the court considered the facts and law cited by the parties. In its order, the court identified pertinent facts and law. The arguments now advanced by [Bronner] in its motion to enlarge and amend were previously considered by the court.
>
> If a post-trial motion requesting enlargement or expansion of the trial court's findings and conclusions amounts to no more than a rehash of legal issues raised and decided adversely to the movant, the motion is inappropriate. *Sierra Club Iowa Chapter v. Iowa Dep't of Transp.*, 832 N.W.2d 636 (Iowa 2013).

Bronner now appeals.

## II. Timeliness of Appeal.

Reicks Farms first asserts this court does not have jurisdiction to hear the appeal because the notice of appeal was not timely filed. Bronner filed her notice of appeal later than thirty days after the entry of judgment, but within thirty days from the filing of the rule 1.904(2) motion.

Generally, a notice of appeal must be filed within thirty days from the entry of a final order or judgment. Iowa R. App. P. 6.101(1)(b).[2] A timely rule 1.904(2) motion extends the time for appeal such that the appeal must be filed within thirty days of the filing of the district court ruling on that motion. *Id.* However, our supreme court has previously held only a "proper rule 1.904(2) motion" extends the time to file an appeal. *See Hedlund v. State*, 875 N.W.2d 720, 725 (Iowa 2016). A rule 1.904(2) motion is improper when it "'amount[s] to no more than a rehash of

---

[2] In 2008—when the car accident at issue occurred—rule 6.101 was then codified as rule 6.5. For purposes of this opinion, we will refer to the rule as currently codified.

legal issues' previously raised and decided." *Id.* at 726 (citation omitted). Reicks Farms argues because—as the district court held—Bronner's rule 1.904(2) motion was merely a rehashing of the legal issues previously raised and addressed by the district court, it was not a proper motion and did not toll the time to file the appeal. Thus, Reicks Farms asserts the appeal is untimely.

However, Iowa Rules of Civil Procedure 6.101(1) and 1.904 were amended in November 2016. Rule 6.101(1)(c), effective March 1, 2017, now provides: "[A] motion is considered timely if it has been filed by the applicable deadline and asks the court to reconsider, enlarge, or amend its order, ruling, judgment, or decree. Whether a motion is proper or not does not affect its timeliness." The comments to both rule 6.101 and rule 1.904 explicitly state the rules

> supersede prior case law that held a timely rule 1.904(2) motion must also have been "proper" to extend the time for appeal. . . . To obviate controversies over whether a rule 1.904(2) motion tolls the time for appeal, [the rules] authoriz[e] any timely rule 1.904(2) motion to extend the appeal deadline.

Bronner asserts the amendments to the rules apply retrospectively. Thus, regardless of whether her rule 1.904(2) motion was proper, it tolled the time for appeal. We agree.

"The general rule is that if a statute or amendment is 'substantive,' it will not be applied retrospectively, unless it is clearly made applicable by its terms." *Smith v. Korf, Diehl, Clayton & Cleverly*, 302 N.W.2d 137, 138 (Iowa 1981). "However, if it relates to 'procedure,' it is not limited to prospective application, even in the absence of clear legislative intent." *Id.* In *Smith*, our supreme court determined an amendment to Iowa Rule of Appellate Procedure 1 (now rule 6.108) regarding the form of an appeal was procedural in nature, and thus, applied retrospectively.

*See id.* ("Notwithstanding the fact appellate rule 1(c) is facially a procedural rule, the Smiths contend it is substantive for purposes of this case because it 'determine(s) the parameters of the jurisdiction of the court.' We do not agree. The amendment to appellate rule 1 does not define the jurisdiction of this court; it merely establishes a method of implementing our jurisdiction, already existing, to allow interlocutory appeals.").

Here, the rules are both facially and substantively procedural. The rule changes relate solely to when a rule 1.904(2) motion tolls the time for filing an appeal. We find it significant the amendments to the rules specifically recite that the rule amendments supersede prior case law. Thus, after March 2017 the case law upon which Reicks Farms relies was no longer authoritative. Additionally, both comments to the rules reflect the intent to eliminate disputes such as this one. We find the amendments to rules 6.101(1) and 1.904 apply retrospectively, and Bronner's appeal is timely because it was filed within thirty days of the ruling on the 1.904(2) motion—regardless of whether the motion was "proper."[3] We therefore consider the issue raised on appeal: whether the district court abused its discretion in granting a new trial.

---

[3] Reicks Farms cites to *Carroll v. Samuell*, No. 16-0003, 2016 WL 7395757 (Iowa Ct. App. Dec. 21, 2016), as authority for its argument that rule 1.904 is not applied retroactively. However, the opinion in *Carroll* was filed before the rule became effective in March 2017, and thus before the amended rule superseded prior case law. We also observe the transcript of the hearing on the motion for new trial was not provided as a part of the record on appeal and the court's orders granting the new trial and denying the rule 1.904(2) motion to enlarge are not sufficiently specific to permit us to make a determination if the rule 1.904(2) motion was or was not a rehashing of the same issues.

**III. Standard of Review.**

Our review of rulings on a motion for new trial depends on the grounds asserted in the motion. *Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012). "If the motion [for new trial] is based on a discretionary ground such as misconduct it is reviewed for abuse of discretion." *Id.* (alteration in original) (quoting *Loehr v. Mettille*, 806 N.W.2d 270, 277 (Iowa 2011)). "An abuse of discretion consists of a ruling which rests upon clearly untenable or unreasonable grounds." *Loehr*, 806 N.W.2d at 277 (citation omitted).

**IV. Analysis.**

Iowa Rule of Civil Procedure 1.1004(2) provides a motion for new trial may be granted if misconduct of the prevailing party materially affected the movant's substantial rights. "[T]he general rule is that in order for the granting of a new trial based upon attorney misconduct to be warranted, the objectionable conduct ordinarily must have been prejudicial to the interest of the complaining party." *Mays v. C. Mac. Chambers Co.*, 490 N.W.2d 800, 803 (Iowa 1992). Thus, "unless a different result would have been probable in the absence of misconduct, a new trial is not warranted." *Loehr*, 806 N.W.2d at 277.

The district court has considerable discretion in determining whether misconduct was prejudicial. *Mays*, 490 N.W.2d at 803. This is because the district court "has before it the whole scene, the action and incidents of the trial as they occur, and is in a much better position to judge whether the defendant has been prejudiced by misconduct of opposing counsel." *Id.* (citation omitted). "[W]e are

'slower to interfere with the grant of a new trial than with its denial.'" *Loehr*, 806 N.W.2d at 277 (citation omitted).

Here, Reicks Farms maintains plaintiff's counsel engaged in misconduct by repeatedly making improper statements at trial vouching for the credibility of Bronner and Bronner's witnesses, stating defense counsel had been untruthful and had misled the jury, and imploring the jury to stand up for Bronner.

**(1) Error Preservation.**

Bronner first asserts many of the statements made by her counsel at trial were not properly reviewed by the district court because timely objections were not made at trial.

We note that generally,

> In order to properly preserve for review in this court alleged error of counsel occurring during the course of jury argument it is the duty of the aggrieved party to call attention of the presiding judge to the alleged misconduct by timely objection and move by some proper procedure to give the trial court opportunity to correct the matter by admonition or further instruction or in the event the matter is sufficiently prejudicial by declaring a mistrial. It has been pointed out in several of our decisions that ordinarily where the aggrieved party does not object at trial to statements made by opposing counsel in his closing argument and does not move for a mistrial due to the alleged misconduct either at the time an improper argument is made or at the close of the argument before submission of the case to the jury in those instances where the arguments are reported and constitute a part of the record such conduct indicates a willingness of counsel to take his chances on a favorable verdict and constitutes a waiver of the misconduct.

*State v. Phillips*, 226 N.W.2d 16, 18-19 (Iowa 1975) (citing *Pose v. Roosevelt Hotel Co.*, 208 N.W.2d 19, 31 (Iowa 1973)). However, "[e]xceptions to the general principle where the misconduct is flagrantly improper and evidently prejudicial are recognized in *Shover v. Iowa Lutheran Hospital*, 107 N.W.2d 85, 91 [(Iowa 1961)]."

*Phillips*, 226 N.W.2d at 19; *see also Connelly v. Nolte*, 21 N.W.2d 311, 317 (Iowa 1946) ("We recognize that the misconduct in argument may be so flagrantly improper and so evidently prejudicial that it may be considered by us even though no exception was taken at the time the remarks were made.").

Our supreme court has also previously explained the district court is not prohibited

> from granting a new trial in every case where the ground for new trial was not raised at the first available opportunity during trial. Although a party loses its *right* to a new trial if it neglects timely error preservation, this does not necessarily bar a district court from exercising its *discretion* to grant a new trial if a ground set forth in rule 1.1004 has been met. . . .
> . . . .
> The trial court is not bound by the record in the same way that the appellate courts are. Therefore, it is not invariably an abuse of discretion for a trial judge to grant a motion for new trial based on a matter that could have been raised earlier, but was not.

*Loehr*, 806 N.W.2d at 278 (citations omitted). The *Loehr* court also noted, "although previous 'inaction on counsel's part' does not deprive the district court of jurisdiction to grant a motion for new trial, it 'weighs heavily in evaluating the right to a new trial.'" *Id.* at 281.[4] We recognize defense counsel may have had reservations about moving for mistrial here, because this case had resulted in a mistrial once before. It may have been more prudent for defense counsel to object to more of the statements made during plaintiff's counsel's closing argument, to request cautionary instructions or admonishments from the court, or to move for a mistrial based on the alleged conduct. Reicks Farms' counsel did make four

---

[4] We note the "failure to make a contemporaneous objection will preclude a party from raising the matter on appeal if the motion for new trial is *denied.*" *Loehr*, 806 N.W.2d at 279. However, here, the motion for new trial was granted. "[W]e have said repeatedly that district courts have inherent authority to grant new trials." *Id.*

objections during the rebuttal closing arguments of Bronner's counsel. Defense counsel may have chosen to avoid making even more objections to the improper statements because

> [c]ontinued objections by counsel to prejudicial statements of opposing counsel in his argument to the jury could place the former in a less favorable position with the jury, and thus impose an unfortunate consequence upon his client which was actually caused by the wrongful conduct of opposing counsel. This he is not required to do. Attorneys engaged in the trial of cases to a jury know or ought to know the purposes of arguments to juries. When they depart from the legitimate purpose of properly presenting the evidence and the conclusions to be drawn therefrom, they must assume the responsibility for such improper conduct. They are in no position to demand that opposing counsel shall jeopardize his position with the jury by constant objections to their improper conduct.

*Andrews v. Struble*, 178 N.W.2d 391, 402 (Iowa 1970) (citation omitted).

Here, the district court was not precluded from considering counsel's flagrant misconduct in its totality in reaching its conclusion as to the motion for new trial. While the lack of specific objections at trial to each of the improper statements should have been noted and weighed, it was not an abuse of discretion for the district court to consider the cumulative effect of counsel's improper statements.

**(2) Misconduct.**

The district court concluded plaintiff's counsel made improper statements in the rebuttal argument. Bronner argues the statements were merely appropriate rebuttal statements made in response to defense counsel's closing argument. However, as the district court noted, Iowa Rule of Professional Conduct 32:3.4(e) provides, "A lawyer shall not . . . in trial, . . . assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, [or] the culpability of a civil

litigant, . . ." *See also Rosenberger Enters, Inc. v. Ins. Serv. Corp. of Iowa*, 541 N.W.2d 904, 908 (Iowa Ct. App. 1995) ("Counsel has no right to create evidence by his or her arguments, nor may counsel interject personal beliefs into argument. This is true whether the personal belief is purportedly based on knowledge of facts not possessed by the jury, counsel's experience in similar cases, or any ground other than the weight of the evidence in the trial." (citations omitted)).

In the ruling on the motion for new trial, the court stated,

> Counsel is precluded from using argument to vouch personally as to a defendant's guilt or a witness's credibility, and such is true whether the personal belief is purportedly based on knowledge of facts not possessed by the jury, counsel's experience in similar cases, or any ground other than the weight of the evidence.

Therefore, the court found:

> Plaintiff's counsel made improper statements in his rebuttal to [Reicks Farms]'s closing argument. Those improper remarks included, but were not limited to, vouching for the veracity of [Bronner] and her witnesses. Furthermore, by stating, 'Everything <u>we</u> have said here is true . . . ," counsel asserted personal knowledge of the facts in issue.

In criminal cases, our supreme court has recognized factors to be considered in determining if prosecutorial misconduct has occurred: "(1) the severity and pervasiveness of misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; (5) the extent to which the defense invited the misconduct." *State v. Neiderbach*, 837 N.W.2d 180, 209 (Iowa 2013).

Using those factors, we view plaintiff's counsel's statements as severe and pervasive. Even after defense counsel made proper objections and the objections

were sustained, counsel continued to repeat the offending statements. Also, the improper statements were significant to the central issue in this case. Reicks Farms stipulated they were liable for the accident, leaving only the amount of damages as an issue to be resolved by the jury. Plaintiff's counsel's statements regarding the credibility of Bronner and Bronner's witnesses, and portraying Reicks Farms as untruthful and unwilling to compensate Bronner for her injuries went directly to the heart of the issue of damages. Here, defense counsel did not request cautionary instructions or other curative measures specific to the improper statements made in rebuttal closing argument. However, even where objections were sustained, counsel continued to exceed the bounds of proper rebuttal closing argument. Cautionary instructions simply would not have cured counsel's improper arguments.

Bronner also contends defense counsel invited the improper rebuttal statements due to statements made in its closing argument. For example, Bronner maintains her counsel's statement about Reicks Farms choosing to give Bronner a "goose egg" if they were able was in response to defense counsel's statement in closing argument that Reicks Farms believed Bronner should be compensated. However, Reicks Farms had stipulated to full liability for the accident and to the amount of past medical damages. It would follow Reicks Farms intended the outcome of the case would be a payment of damages in some amount to Bronner. It does not follow that Reicks Farms intended to give Bronner "zero." In short, plaintiff's counsel's statement was not reasonably based upon the evidence presented and was improper closing arguments.

Bronner also asserts defense counsel invited counsel's rebuttal regarding being "disappointed" in defense counsel. Bronner argues her counsel informed the jury they had been misled by defense counsel's untruthfulness because defense counsel had, indeed, been untruthful in making statements about the amount of damages sought by Bronner and the reason for obtaining photos from Bronner's Facebook account to admit as exhibits at trial. We do not agree.

First, it was not disingenuous for defense counsel to state in its closing that Bronner sought thirteen million dollars in damages. The thirteen-million-dollar figure was discussed extensively in jury selection, opening statements, and Bronner's closing argument. Plaintiff's counsel made no objection. If counsel believed defense counsel made improper statements about the amount of damages requested, an objection should have been lodged rather than to disparage opposing counsel. For all practical purposes, plaintiff's counsel called defense counsel a liar when he claimed what defense counsel stated was untrue. He then followed up by stating, "And I'm disappointed at what I just heard come out of the mouth of that human being sitting right there."

Second, defense counsel clearly explained to the jury the reasons he obtained the Facebook photos:

> [Y]ou need to see the photographs of her throughout her life and look and see what it is you see. Is there disfigurement there, in your eyes?
> . . . .
>     The second reason the photos are significant and are useful to you is that it shows you what has gone on in her life, and how this has impacted her or has not impacted her.

Defense counsel offered such explanation because plaintiff's counsel questioned the use of the photos in his closing argument. But plaintiff's counsel was able to

object to these statements if he felt they were improper. Further, plaintiff's counsel also introduced photos into evidence to depict the severe injuries to Bronner's face at the time of the accident and to reflect her lasting scars and disfigurement. The jury was also able to view Bronner in person at trial. We do not find defense counsel's statements were untruthful.

Defense counsel asked the jury to review the medical records and to "look at the big picture" and determine the appropriate amount of damages. We do not agree defense counsel was untruthful in closing argument so as to invite plaintiff's counsel's improper statements.

We acknowledge counsel can make remarks based upon his or her view of the evidence so long as the remarks do not vouch for a witness's credibility other than the weight of the evidence. But plaintiff's counsel made improper statements that clearly vouched for the credibility of Bronner and Bronner's witnesses, calling them "truth tellers" and stating "[e]verything we have said here is true." Additionally, counsel made statements as to the incredibility of defense counsel, told the jury they had been misled, and asked the jury to stand up for Bronner against Reicks Farms, which would give Bronner "zero" if it could. Although plaintiff's counsel made some proper arguments based upon the evidence during closing arguments, we cannot conclude the vouching statements were based upon counsel's view of the evidence as argued by Bronner. Frankly, counsel's vouching was not limited to his rebuttal argument even though the district court did not rely upon counsel's earlier statements in closing arguments. For example, we know of no basis in the evidence nor did counsel refer to any evidence when he opined, "Kelsey Bronner and her parents are truth tellers, salt of the earth, good people,

truth tellers, . . . ." We do not suggest the statement about the Bronner family was inaccurate, but simply that counsel cannot express his personal opinion on their credibility without referencing record evidence.

Plaintiff's counsel's statements exceeded the bounds of proper closing argument. We do not find the court abused its discretion in determining the improper statements constituted misconduct.

**(3) Prejudice.**

Bronner also contends granting a new trial is an abuse of discretion because there is no evidence the misconduct resulted in prejudice to Reicks Farms. *See Mays*, 490 N.W.2d at 803.

Bronner asserts prejudice cannot be shown because defense counsel did not make objections to all of the alleged improper statements and did not seek cautionary instructions or admonishments in the instances where an objection was made. Bronner also argues there could be no prejudice resulting from statements made in closing or rebuttal closing argument because the jury was instructed to base its determination on the evidence and not on the attorneys' statements.

Reicks Farms cites to *Gilster v. Primebank*, 747 F.3d 1007, 1011 (8th Cir. 2014), as instructive to this case. In *Gilster*, the court found prejudice based on misconduct where "[c]ounsel made a deliberate strategic choice to make emotionally-charged comments at the end of rebuttal closing argument, when they would have the greatest emotional impact on the jury, and when opposing counsel would have no opportunity to respond." 747 F.3d at 1011.

Here, the court held the improper statements by plaintiff's counsel "were calculated to, and with reasonable probability did, influence the jury's verdict." The

court found "the rebuttal argument of plaintiff's counsel prejudiced defendant and it is probable a different result would have been reached, but for that misconduct." We agree.

Although the jury was instructed that the statements by the attorneys were not evidence, plaintiff's counsel strategically made the improper statements in the rebuttal closing argument in an effort to invoke the emotions of the jury, establish the credibility of Bronner and Bronner's witnesses, and to attack the credibility of the defense counsel. The improper statements were made at a time when defense counsel was not afforded an opportunity to respond and when the statements would be fresh in the jury's mind for deliberations. Further, no medical expert testimony was offered at trial to expressly support Bronner's contention that her injuries would result in periodic swelling and increasing drooping of her face over time.[5] Thus, the credibility of Bronner and Bronner's witnesses as to the effects of Bronner's injuries was an issue of great import in the ultimate question the jury was required to answer: how much had Bronner suffered and how much would she suffer for the rest of her life? Defense counsel lodged proper objections to some of the improper statements made during rebuttal closing argument. On more than one occasion counsel simply repeated the offending statement after the objection was sustained.

---

[5] Doctor Oren Friedman testified in his deposition admitted at trial that he had not seen Bronner as a patient since September of 2010 therefore was not aware of the extent of Bronner's ongoing injuries or the extent of her recovery since September 2010. Doctor Friedman also testified as to his knowledge of one swelling incident but did not note it was medically concerning and could not state with certainty what caused the swelling.

Under these circumstances, we find it probable the jury would have reached a different determination as to damages but for plaintiff's counsel's misconduct. We cannot conclude the district court's finding of prejudice rested on clearly untenable or unreasonable grounds. On our review of the record, we decline to interfere with the district court's considerable discretion in determining the misconduct was prejudicial. *See Rosenburger*, 541 N.W.2d at 907.

**V. Conclusion.**

We find the district court did not abuse its discretion in granting a new trial. We therefore affirm.

**AFFIRMED.**